428 So.2d 1361 (1983)
Jimmy Lee PEARSON
v.
STATE of Mississippi.
No. 54074.
Supreme Court of Mississippi.
March 9, 1983.
Rehearing Denied April 13, 1983.
*1362 Thomas D. Lee, Forest, for appellant.
Bill Allain, Atty. Gen. by Catherine Walker Underwood, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
On the morning of October 22, 1981, the home of A.B. Crudup near Pulaski, Scott County, Mississippi, was burglarized. In due course Jimmy Lee Pearson, defendant below and appellant here, and Danny Paul Hicks were formally charged with this burglary in indictments returned by the Scott County Grand Jury. After severance, the case against Jimmy Lee Pearson was called for trial on the morning of Monday, March 8, 1982. That afternoon, after hearing all of the evidence and receiving the instructions of the court and the arguments of counsel, the jury found Pearson guilty of the charge of burglary. The Circuit Court thereupon imposed the maximum allowable sentence, ten years. Miss. Code Ann. § 97-17-19 (1972).
Pearson thereafter timely filed a motion for a new trial, attacking both his conviction and sentence. The Circuit Court overruled the motion. Pearson then filed a motion to reduce his sentence to a term in line with plea bargain offers he had received before trial. This motion likewise was overruled.
Pearson has perfected his appeal to this Court where he again attacks both his conviction and sentence. We affirm.

II.
Stating them as we must in the light most favorable to the verdict, the facts are as follows: A.D. Crudup, his wife Kathleen and three of his children live in a home some three-quarters of a mile east of the Pulaski community, which is in turn some seven miles south of Morton, Mississippi. On the morning of October 22, 1981, Mr. and Mrs. Crudup left for work as usual; the children, of course, went to school. The house was left locked.
That morning Jimmy Lee Pearson and his half-brother, Danny Paul Hicks, were riding in an automobile traveling toward Pulaski. Hicks was driving. Pearson told Hicks to stop and let him out of the car and to come back and pick him up later. Hicks said he was going to town to see someone about making some repairs to his car. He let Pearson out within walking distance of the Crudup home. Pearson then walked to the Crudup home and broke into and entered the same. He carried away, among other things, a small tabletop television and a .410 gauge shotgun.
After the completion of his criminal deeds, Pearson returned to the roadside where he was picked up by Hicks. Hicks then drove the two to Hicks' home where the fruits of the burglary were deposited. The two then borrowed a truck and picked up yet another companion, Sammy Holifield. The three returned to Hicks' home and picked up the stolen items and thereafter sold some of them.
On November 9, 1981, Hicks was arrested in connection with the crime. Hicks gave a statement to law enforcement officials implicating Pearson. On November 13, 1981, Pearson was arrested and orally confessed the burglary.
As indicated above, Pearson, now 36 years old, has been indicted, tried and convicted of the crime of burglary and sentenced to a term of ten years. Hicks was allowed to plead guilty to a charge of accessory after the fact of burglary and received a five-year probationary sentence. Holifield has never been indicted.

*1363 III.
On this appeal Pearson urges as error the refusal of the Circuit Court to direct a verdict of acquittal or, in the alternative, to grant him a new trial. The sole basis for this contention is Pearson's argument that the verdict "was tainted and based largely on perjured testimony introduced by the state."
This Court has on more than one occasion affirmed a conviction under circumstances more egregious than those here. That an accomplice may on the witness stand vary his testimony from his pretrial statements neither renders the testimony per se inadmissible, nor does it vitiate a subsequent conviction. See Frazier v. State, 142 Miss. 456, 459-460, 107 So. 674, 675 (1926); Vanderpoel v. State, 251 So.2d 922, 925-926 (Miss. 1971).
To be sure, where it may be established that a conviction has been obtained through the use of false evidence or perjured testimony, the accused's rights secured by the due process clause of the Fourteenth Amendment of the Constitution of the United States are implicated. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). And this is so without regard to whether the prosecution has wilfully procured the perjured testimony. Where such false evidence has in fact contributed to the conviction, the accused is entitled to relief therefrom. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
On the record here under review Pearson simply does not present us with the facts sufficient to grant him relief under these well established principles of law. Pearson does not come before this Court armed with any finding of fact that perjury has been committed by a material witness on an issue important to Pearson's culpability.
It is true that on one occasion outside the presence of the jury the Circuit Judge remarked "I have heard a lot of lying going on here today ..." And in overruling defendant's motion for a directed verdict at the conclusion of the state's case, referring to the witness Danny Paul Hicks, the Circuit Judge remarked "In my opinion, he is guilty of perjury, or at least some of the other witnesses may be guilty of perjury."
From our careful review of the record and the context in which the Circuit Judge's remarks were made, Pearson's argument has no force. The expressed skepticism regarding Hicks' testimony pertain to the nature and extent of Hicks' involvement in the events of October 22, 1981, not Pearson's. Hicks did change his story from the time of his own confession of November 9, 1981, until the time of trial. The particulars of the change, however, go to Hicks' culpability, not Pearson's. Under any version Pearson is left as the active perpetrator of the crime.
Beyond that, the jury had before it Pearson's oral confession of his own involvement, admissibility of which is not challenged.
The Danny Hicks story was fully disclosed to the jury. That he had struck a plea bargain with the State in exchange for his testimony against Pearson was explained in open court.[1] The jury knew that Hicks was going to receive a five year probationary sentence, that if Hicks behaved himself he was not going to Parchman. With appropriate contempt, defense counsel seared Hicks on cross-examination.
The Circuit Judge correctly cautioned the jury regarding the testimony of the accomplice Hicks. He instructed the jury
[t]hat the law looks with suspicion, distrust and disbelief on the testimony of an accomplice and requires the jury, to weigh the same with great care and caution *1364 and suspicion. In this case you are instructed that Danny Paul Hicks is an accomplice and in passing upon that weight, if any, you should give his testimony, you should weigh it with great care and caution and look upon it with distrust, disbelief and suspicion.
The instruction is perhaps inartfully drafted, perhaps redundant, but far more than adequate to tell the most unlettered juror what Pearson was entitled to have that juror know.
Suffice it to say that under our system, the jury is charged with the responsibility for weighing and considering conflicting evidence and the credibility of witnesses. E.g., Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980). Once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty. Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560, 576 (1979). Here the evidence points strongly toward guilt under any view. Pearson was not entitled to a directed verdict of acquittal.
Similarly, we will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Again, because the credible evidence suggests guilt, the Circuit Court correctly denied Pearson's motion for a new trial.

IV.
The Circuit Court imposed upon Pearson the maximum sentence allowable under law, 10 years. Pearson challenged that sentence in the court below on grounds that it was imposed to penalize him for having exercised his constitutional right to a trial by jury secured by the Sixth and Fourteenth Amendments to the Constitution of the United States. Prior to trial, the State did offer Pearson a six-year sentence in the course of plea bargain negotiations. Subsequently, and again prior to trial, the State offered a four-year sentence. Pearson rejected the offered plea bargains and insisted upon trial by jury.
Without doubt, had Pearson's "enhanced" sentence been imposed as a penalty for his exercise of his Sixth Amendment rights, he would be entitled to relief here. See, e.g., Fermo v. State, 370 So.2d 930, 932 (Miss. 1979); Williamson v. State, 388 So.2d 168, 170 (Miss. 1980).
We wish to emphasize the absolute nature of the right of a person charged with a crime to trial by jury. This right is secured to every citizen by the Sixth and Fourteenth Amendments to the Constitution of the United States. It is secured to every Mississippian by Article 3, Section 26 of the Mississippi Constitution of 1890. As a right, it is an entitlement of every individual which he or she may claim no matter how inconvenient society or its members or its courts may deem it.
It is absolutely impermissible that a trial judge imposing sentence enhance the sentence imposed because the defendant refused a plea bargain and put the state and the court to the trouble of trial by jury. Plea bargaining most assuredly is a valuable practice. See Bordenkircher v. Hayes, 434 U.S. 357, 361-362, 98 S.Ct. 663, 666-667, 54 L.Ed.2d 604, 609-610 (1978); Salter v. State, 387 So.2d 81, 83-84 (Miss. 1980). Both the prosecution and the defense  and the courts as well  have an interest in the continuance of that practice. As in civil matters, not infrequently the prosecution and the defense can negotiate a more tolerable result than might be effected through plenary trial on the merits before a jury. Still, as important as these interests are, they may never justify penalizing one charged with a crime for claiming his absolute right to be tried by a fair and impartial jury of his peers.
There is no presumption that a convicted felon merits the maximum sentence authorized by law, that anything he gets less than the maximum is to be construed as *1365 leniency, a matter of grace. Individualized consideration of the offense and the offender are established hallmarks of our criminal sentencing process. Absent substantial aggravating circumstances frequently including a record of substantial criminal involvement in the past, few offenders receive maximum sentences. This is as it should be in a society which recognizes that vengefulness is seldom the product of maturity, that mercy is not a sign of weakness.
The implementation and enforcement of the no enhancement rule recognized in Fermo and Williamson and re-emphasized here necessarily falls upon the circuit judges of this state. Their integrity, we are confident, is such that the rule is in good hands.
In this case we have closely scrutinized the Circuit Judge's reasons for his enhancement of Pearson's sentence from the levels proposed in the plea bargain negotiations to the ten-year sentence actually imposed. Having done this, it is apparent to us that the basis of the ten-year sentence, in addition to Pearson's conviction in the case at bar, was his prior record. According to that record which Pearson admitted, his criminal activities dated back to March 18, 1963  when he was only 16 years old. It includes service of a 15-year sentence in the State of Texas on an armed robbery charge, coupled with evidence of several other petty offenses.
A further scrutiny of the pretrial plea bargain negotiations makes it clear that the Circuit Judge did not interject himself improperly.[2] The Circuit Judge was advised of the six-year plea bargain offer made by the state but neither accepted nor rejected it. Most importantly, at no time prior to sentencing following the jury's verdict of guilty was the Circuit Judge made aware of Pearson's prior criminal record.[3] See Williamson, 388 So.2d at 170; Frank v. Blackburn, 605 F.2d 910, 914-16 (5th Cir.1979). For aught that appears of record, had the circuit judge not been made aware of Pearson's prior criminal record he would have imposed a sentence in line with those suggested by the plea bargain proposals.
Where a lenient sentence is proposed in pretrial plea bargain negotiations, and where after rejecting same defendant is found guilty by a jury, and where before imposition of sentence the Circuit Judge is presented with evidence of aggravating circumstances relevant to sentencing not known to him at the time of the original plea bargain negotiations, and where in fact the Circuit Judge imposes a heavier sentence than was proposed at the time of plea bargain and in fact bases imposition of the heavier sentence upon the information of aggravating circumstances of which he has been newly made aware, and where the heavier sentence has not been imposed upon the accused in whole or in part as a penalty for his exercise of his constitutional right to trial by jury, the imposition of the heavier sentence violates no known right of the defendant. Under such circumstances[4] the heavier sentence imposed will not be disturbed on appeal.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
ROY NOBLE LEE, J., takes no part.
NOTES
[1] Here the Hicks plea bargain was explained by the State without objection. Defense counsel then used it on cross-examination to impeach Hicks. Nothing said here in any way qualifies the rule of our cases such as Ivy v. State, 301 So.2d 292 (Miss. 1974), holding it to be error to allow the prosecution, over defense objections, to put before the jury that the defendant's co-indictee has already been convicted of the same crime.
[2] In Fermo, we cautioned trial judges to remain aloof from the plea bargain negotiations by refraining from direct involvement or participation therein. 370 So.2d at 933.
[3] Unless the State wishes to use it to impeach the defendant on cross-examination, there is no reason why if the case is going to trial, it should disclose to the circuit judge that the defendant has a prior criminal record until the sentencing stage is reached. If the case is going to be plea bargained, however, the circuit judge should be advised of the defendant's prior record before he is asked to approve the plea bargain.
[4] It will greatly assist this Court in the performance of its appellate review function if in such cases the trial judge will candidly place in the record a statement of the factors he considered in determining the sentence imposed.