468 So.2d 856 (1985)
Alvin GILLUM
v.
STATE of Mississippi.
No. 54617.
Supreme Court of Mississippi.
April 24, 1985.
Rehearing Denied May 22, 1985.
*858 James G. Tucker, III, Cook, Tucker & Sharp, Bay St. Louis, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
ALVIN GILLUM was convicted of burglary of a dwelling under Mississippi Code Annotated § 97-17-19 (1972), and sentenced to serve 7 years in prison. He appeals this determination of the Circuit Court of Hancock County, Mississippi.
Mr. and Mrs. John Highstreet of New Orleans, Louisiana, own a weekend home in Waveland, Mississippi. On the 19th of May, 1981, they were informed by their son that their Waveland house had been broken into. At about 11 o'clock A.M., on May 21, 1981, the Highstreets arrived at the Waveland house and found that it had been broken into. The kitchen was in a mess, with dirty dishes, pork chop bones, and a carton of ice cream, partially melted, on the table. In the kitchen sink was ground meat thawing. They discovered that several appliances, including a television and a clock radio, were missing. The deadbolt lock on their back door had been broken loose. The Highstreets contacted the local police and were advised to stay away from the house while an officer staked it out.
Officer Charles James of the Waveland Police Department staked out the Highstreet's home beginning about 11:50 a.m. the same day. At 2:30 that afternoon, he heard the back door open, drew his weapon and arrested the defendant in the kitchen. James recalled that some of the ice cream in the half gallon container was still frozen and that the hamburger meat had just started to "sweat".
Two days later, several appliances were found in a vacant lot next to their home and a portable radio was found on the back patio.
Mr. Highstreet testified that his family tried to make it over to their Waveland home every two or three weekends. They spent the night there once every two or three weekends on the average, but live most of the time in New Orleans. They do not rent the house out but occasionally lend it to their neighbors. They have owned the Waveland house for eight years, and Mr. Highstreet agreed that it is fair to say that usually nobody stays there.
At his trial, Gillum moved for a peremptory instruction on the insufficiency of the proof to show that the house was a dwelling house because of the lack of regular habitation and for the further ground that there was no proof of intent to steal. The trial court did not grant the peremptory instruction. The trial court also declined to grant a lesser included offense instruction for trespass.
In the sentencing phase the state offered proof that the defendant had been arrested on three or four other breaking and enterings. After receiving oral and written sentencing reports, the trial court sentenced Gillum to seven years, recommending psychiatric counseling.
Additional facts and the trial judge's remarks during the sentencing phase will be presented under those assignments of error.

*859 I.

WILL A PROSECUTION FOR BURGLARIZING A DWELLING HOUSE LIE FOR THE BREAKING AND ENTERING OF A WEEKEND HOME?
Gillum was convicted under Mississippi Code Annotated § 97-17-19 (1972), which provides:
Every person who shall be convicted of breaking and entering any dwelling house in the day or night with intent to commit a crime shall be guilty of burglary and be imprisoned in the penitentiary for not more than ten years.
Dwelling house is defined in Mississippi Code Annotated § 97-17-31 (1972), as follows:
Every building joined to, immediately connected with, or being part of the dwelling house, shall be deemed the dwelling house.
Our decisions make clear that more is required than that a house was built to serve as a place for human habitation in order for it to qualify as a dwelling. We held in Woods v. State, 186 Miss. 463, 191 So. 293 (1939), and Watson v. State, 254 Miss. 82, 179 So.2d 826 (1965), that such a building does not become a dwelling until the first dweller has moved in. By the same token, after a dweller has moved out with no intention of returning, the place is not a dwelling. Haynes v. State, 180 Miss. 291, 177 So. 360 (1937). The temporary occupancy of a room by a guest in a hotel is insufficient to qualify as a dwelling. Robinson v. State, 364 So.2d 1131 (Miss. 1978). Robinson states that the intention of the dweller is the material consideration and that a hotel room would be a dwelling if it is actually where a person permanently resides. Id. at 1134.
Gillum compares his situation to Scott v. State, 62 Miss. 781 (1885), wherein the owner of a building visited the place once or twice a year, remaining sometimes a week or less. While there, he slept and ate at the house and in his absence another looked after the place but did not sleep there. This Court said:
The building as described by the testimony was not a dwelling house in legal contemplation. To render a building a dwelling house, it must be a habitation for man, and usually occupied by some person lodging in it at night. A building which is in fact a dwelling house does not lose its character as such by a mere temporary absence of its inhabitants who have left with intent to return, but it does not become a dwelling house, though used for taking meals and other purposes, unless the person occupying it or some one of his family or servants usually sleep in it at night.
Id. at 782. Gillum argues that the Waveland house was too infrequently occupied to qualify as a dwelling according to Scott v. State, supra, in that Mr. Highstreet admitted that usually no one slept there at night and it was occupied only every other weekend at most.
The state points out that under Robinson v. State, supra, the intention of the dweller is the material consideration. The Highstreets had regularly used their Waveland home on alternate weekends for eight years, leaving food, clothing, and other necessities there. The state directs attention to our acknowledgment that a temporary absence does not destroy the character of a home as a dwelling if the dweller leaves with the intent to return. Scott v. State, 62 Miss. at 782. Haynes v. State, 180 Miss. at 297, 177 So. at 361.
The seasonal or intermittent use of a residence, according to the weight of authority, does not prevent it from becoming a dwelling. See 20 A.L.R. 4th 349, § 9(a), pp. 367-70 (1983). The view that occupancy need not be continuous is likewise shared by many courts. Id. at § 7(c), p. 365. A doubt as to one's intention to return coupled with long-continued absence, such as in Scott v. State, may be sufficient to destroy the character of a house as a dwelling, but such is not the case here. The frequency and regularity of the Highstreets' visits distinguish this case from Scott v. State. The presence of clothing, furniture, food and other amenities *860 of life also lends credence to the position of the state that the house qualified as a dwelling under § 97-17-19.
That a person may simultaneously have two dwellings, either of which would be subject to burglary under § 97-17-19, does not establish a new principle of law. In the 1500's we find the following resolution by the English Court:
If a man have two houses and inhabit sometimes in one, and sometimes in the other, if that house in which he doth not inhabit be broken in the night, to the intent to steal the goods then being in his house, then this is burglary, although no person be then in the house.
Popham 52, 79 Eng.Rep. 1169 (1593). We do no violence to the statute or the case law in concluding that a person may simultaneously have two dwellings subject to burglary and sometimes reside with his family in one and sometimes in the other. The breach of one of them in the absence of his family would still be burglary. This is not only in keeping with our law. It is in keeping with common sense and life in Mississippi in 1985. The law does not exist in a vacuum. This very Court is peopled with citizens who maintain more than one dwelling simultaneously, as are many branches of state government alone. To hold that the burglary of one of the dwellings of our citizens in these categories is not an offense against their habitation would not only be arbitrary and capricious but it would fly in the face of legislative intent and everyday reality. This we are not inclined to do. The law and common sense are not like east and west and occasionally, as here, the twain do meet.
There is no merit to the appellant's first assignment of error and prosecution for burglary of a dwelling will lie in circumstances such as these.

II.

WAS THE PROOF INSUFFICIENT TO ESTABLISH INTENT TO STEAL?
Appellant points out that two essential elements of a burglary must be proven: An unlawful breaking and entering and an intent to commit some crime inside the subject building. Taylor v. State, 214 Miss. 263, 58 So.2d 664 (1952). It is conceded that we have frequently held that the existence of intent to steal may be presumed from proof of breaking and entering. Moseley v. State, 92 Miss. 250, 45 So. 833 (1908); Nichols v. State, 207 Miss. 291, 42 So.2d 201 (1949); Dixon v. State, 240 So.2d 289 (Miss. 1970). But Gillum asserts that it is unconstitutional for intent to steal to be presumed from proof of breaking and entering because the state has the burden of proof throughout to prove each element of the crime charged, not the defendant. Patterson v. New York, 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977); Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
In Dixon v. State, supra, the defendant was apprehended by the owner of a store after he broke and entered a window at the rear of the building at night. Dixon contended that the state failed to prove intent to commit larceny. This Court said the Mississippi rule was set out in Nichols v. State, supra:
Some presumptions are to be indulged in against one who enters a building unbidden, at a late hour of night, else the burglar caught without boot might escape the penalties of the law... . People are not accustomed, in the nighttime, to enter homes of others, when asleep, with innocent purposes. The usual object is theft, and this is the inference ordinarily to be drawn in the absence of explanation from breaking and entering at night, accompanied by flight when discovered, even though nothing has been taken.
This Court also quoted Newburn v. State, 205 So.2d 260 (Miss. 1967):
The state seldom has direct and positive testimony expressly showing the specific intent of an intruder at the time he unlawfully breaks into a dwelling house; however, such testimony is not essential to establish the intent to commit a crime. *861 Intent is an emotional operation of the mind, and it is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. Defendant's intention is manifested largely by the things he does. 205 So.2d at 265.
240 So.2d at 290. The Court sustained Dixon's burglary conviction on the ground that he broke and entered a window at the rear of the building at night, though he testified that he entered the building to get warm. Id.
Appellant contends that his burglary conviction rests solely upon proof of unlawful entry, and that the record is devoid of any other facts and circumstances from which an intent to steal could be inferred. Appellant contends that in the absence of any such facts, a legal presumption shifting the burden of proof to him would be unconstitutional.
Appellant's argument overlooks several factors. People are no more accustomed in the daytime than at night to enter the homes of others when unoccupied through a door with a broken lock with innocent purposes. Further there are a number of facts and circumstances connecting Gillum with the burglary of the Highstreets' home. The owners found a partially frozen carton of ice cream and some ground beef thawing in the kitchen when they entered at 11:00 a.m. They also discovered a number of items of property were missing. Finally, the owners found their deadbolt lock on the back door had been forced open. These facts, coupled with Gillum's entry through the back door of the house several hours after the Highstreets' arrival, form a substantial basis for the jury to infer that Gillum had been surprised by the Highstreets and fled, leaving the frozen food out, and returning after the Highstreets had departed, only to be arrested by Officer James. There was ample proof for the jury to infer that Gillum entered the Waveland home with the intent to steal.
We do not deal here with the issue of presumption. Rather, the issue is one of inferences legitimately drawn from the proof. There is sufficient proof to support the jury's inference that Gillum had previously broken into the Highstreets' home, had taken some appliances, and was returning with a larcenous intent when he was arrested. This assignment of error is without merit.

III.

DID THE TRIAL COURT ERR IN REFUSING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF TRESPASS?
Trespass is necessarily a constituent offense of every burglary. Anderson v. State, 290 So.2d 628 (Miss. 1974). It is argued that the trial court erred in refusing instruction D-5, which states that even if the defendant is not guilty of burglary of a dwelling, he may still be found guilty of trespass; and further for refusing instruction D-8, which includes within the possible forms of the verdict, a form to find the defendant guilty of criminal trespass.
A trial court may instruct the jury with references to lesser included offenses when the Court feels such an instruction is warranted by the evidence. Jackson v. State, 337 So.2d 1242 (Miss. 1976). In Jackson, we stated:
Such an instruction should not be indiscriminately or automatically given, ... but should only be given after the trial court has carefully considered the evidence and is of the opinion that such an instruction is justified by the evidence.
Id. at 1255. The proof showed beyond a reasonable doubt that Gillum entered the house with a larcenous intent. Therefore, a trespass instruction was not warranted. There was no evidence to indicate that Gillum was a casual visitor or that he entered for any purpose other than to make himself at home, to plunder and steal. In the absence of any explanation for his presence, the factfinder could give full credit to the testimony shown against him.
Under the facts of this case, the trial court correctly ruled that the jury could either find Gillum guilty of burglary *862 of a dwelling or innocent. There is no merit to this assignment.

IV.

DID THE PROSECUTOR MAKE IMPROPER COMMENTS REGARDING THE STANDARD OF PROOF BEYOND A REASONABLE DOUBT DURING VOIR DIRE AND IN CLOSING?
During voir dire the prosecutor asked the jury as follows:
Do each of you now tell me that that burden of proof, to prove this Defendant guilty in this case beyond a reasonable doubt, that you will hold us to that burden. That you will make us prove him guilty beyond a reasonable doubt, but that you won't make us go any further than the law requires us to go, such as beyond a shadow of a doubt or beyond all doubt or, that you'll hold us to the burden... .
BY MR. TUCKER: (interposing) Your Honor, I'm going to object to, uh, to that comment by the Prosecution about the shadow of a doubt and, uh, all doubt.
BY THE COURT: Overruled.
BY MR. TUCKER: It's an obvious attempt, uh, on his part to placate the natural caution of the Jurors.
BY THE COURT: Overruled.
During the state's closing argument, the prosecutor said the following:
BY MR. SMITH: Of course, Counsel refers to the reasonable doubt of proof and that's what the burden of proof is  that the State of Mississippi must prove this Defendant guilty beyond a reasonable doubt. You know, that began the argument in the entire beginning of the case by Counsel as we were voir diring the Jury... .
BY MR. TUCKER: (Interposing) Judge, he's, uh, arguing outside the record right now.
BY THE COURT: Overruled.
BY MR. SMITH: And that began the entire case as he was arguing about a reasonable doubt, as we were voir diring the Jury. You know, it doesn't say beyond all doubt. It doesn't say beyond a shadow of a doubt.
BY MR. TUCKER: I object. He's instructing the Jury as to the law and erroneously instructing them at that.
BY THE COURT: Overruled.
BY MR. SMITH: I object to that.
BY THE COURT: Overruled.
Gillum urges that the prosecutor's language in the case sub judice during voir dire and argument was not materially distinguishable from the arguments condemned in Edge v. State, 393 So.2d 1337 (Miss. 1981); Clemons v. State, 320 So.2d 368 (Miss. 1975); and Nobles v. State, 241 So.2d 826 (Miss. 1970), to the effect that "the law does not require you to know that this man is guilty. All you have to do is believe it beyond a reasonable doubt." In Nobles, supra, we recognize that such instruction is
... palpably unfair and misleading. It is obviously an effort to placate the natural caution on the part of the jury to require satisfactory evidence of guilt.
241 So.2d at 827. Gillum would have this Court hold that the prosecutor's argument that proof beyond a reasonable doubt is not proof beyond a shadow of a doubt or all doubt is equivalent to the "you don't have to know" argument condemned in Edge. Counsel for Gillum points out that "know" is defined in the American Heritage Dictionary of the English Language (Second Edition, 1969) page 725 as: "to be certain of; regard or accept as true beyond doubt." Gillum contends that, therefore, "knowing" a proposition is synonymous with being convinced of it "beyond all doubt," as argued by the prosecutor.
The state cites Thorne v. State, 348 So.2d 1011, 1013 (Miss. 1977), in which the defendant challenged an instruction in the following language:
The State does not have to prove the charge beyond all possible doubt before a conviction can be had, but the State must *863 prove the Defendant guilty beyond a reasonable doubt before you can convict.
Specifically the state relies upon the following remarks by this Court:
We agree that the instruction is objectionable in attempting to emphasize the distinction between reasonable doubt, as used in the other instructions, and "all possible doubt" and should not have been given. However, it does not reach the prejudicial proportions of the "you do not have to know" instruction condemned in Pryor. The instruction is argumentative, and although it may be suggested that the argument is legally correct, such matters should be limited to the remarks of counsel, not embodied in instructions emanating from the court. Considered in the context of the numerous instructions given touching the State's burden, we have concluded that in this case substantial prejudice did not result to appellant from it. (emphasis added)
Id. at 1015.
The prosecutor in this case did no more than follow the direction of this Court in Thorne, supra, by limiting his distinctions between reasonable doubt and all possible doubt or beyond a shadow of a doubt to remarks during voir dire and closing.
Applying Thorne, supra, to the facts in this case, we find there is no merit to this assignment of error.

V.

DID THE TRIAL COURT IMPROPERLY ENHANCE THE DEFENDANT'S PUNISHMENT FOR DEMANDING A JURY TRIAL?
Gillum alleges that the trial court erred by increasing his sentence in punishment for not entering a guilty plea in violation of his right to trial by jury under U.S. Const. Amend. VI. and Miss. Const. Article 3, Section 26 (1890). He cites Pearson v. State, 428 So.2d 1361 (Miss. 1983); Williamson v. State, 388 So.2d 168 (Miss. 1980); and Fermo v. State, 370 So.2d 930 (Miss. 1979), for the rule that:
A criminal defendant may not receive a harsher sentence solely, or even partially, because he refuses to plead guilty and proceeds to require the prosecution to prove his guilt. The rationale behind the principle is that the coercion or the inducement casts a chill over the exercise of guaranteed fundamental constitutional rights. The sentencing court may consider only legitimate factors and cannot base the sentence, either in whole or part, upon the defendant's exercise of his constitutional rights to a jury trial. [citations omitted]
Fermo, 370 So.2d at 932. We affirmed an enhanced sentence in Fermo because defense counsel directly involved the trial judge in the plea bargain negotiations and, therefore, could not take advantage of an error which he induced the trial court to commit. Id. at 933. In Williamson v. State, the defendant offered to plead guilty for a reduced sentence but the trial judge refused to accept the guilty plea because the defendant gave answers indicating he was offering defenses against the charge. We held that the guilty plea was properly refused and that the imposition of a greater sentence than was offered in exchange for a guilty plea was not reversible error in this case because the defendant had committed an unindicted offense which was unknown to the trial judge when the lighter sentence was proposed. Williamson, 388 So.2d at 170. Finally, in Pearson v. State, a close scrutiny of the trial court's reasons for enhancement of the defendant's sentence from the plea bargain proposal to what was actually imposed made apparent that the basis for the larger sentence was a criminal record dating back 20 years. Pearson, 428 So.2d at 1365. In Pearson, the circuit judge remained aloof from the plea bargain negotiations by refraining from direct involvement as in Fermo v. State, supra. Furthermore, at no time prior to sentencing was the circuit judge informed of Pearson's prior criminal record, as in Williamson v. State, supra. The Pearson Court recommended that trial judges candidly place in the record a statement *864 of factors considered in determining the sentence imposed to assist this Court in the performance of the appellate review function. 428 So.2d at 1365, n. 4.
Gillum refers this Court to several statements by the trial judge prior to sentencing in support of his claim that his sentence was enhanced because he demanded a trial by jury.
... But, my attitude is that if, uh, if a fellow wants a trial, he's not going to get the same bargain as the fellow that pleads guilty. Because if I went by that, I mean, I never would get through trying lawsuits, if I adopted that policy, because I've had over a thousand in Harrison County alone.
... .
... And if you gave them all the same bargain if the Jury convicted as you did when they pled guilty, you know, there's got to be some incentive for coming on in and pleading, so they don't get the same bargain when the Jury convicts them as they do when they plead. That may not sound fair, but it's the only way I can move them out.
The trial court asked the attorneys for both sides for recommendations, and after adjourning one hour to consider the state's sentencing report, the following exchange took place between counsel for the defendant and the trial court:
Uh, another thing I'd like to point out is that I understood the Court was somewhat displeased by the fact that he wanted a trial.
BY THE COURT: No, I'm not displeased.
BY MR. TUCKER: Well, you know, you thought that should be considered in the sentencing. Well, uh, ....
BY THE COURT: (Interposing) Well, I have to do that in order to keep the docket moving.
BY MR. TUCKER: Okay. I, I don't think that should be considered and, uh, I can see the consideration if a man gets up there and denies it, you must necessarily think that he's lying and you would think that somewhat contentious and you would hold it against him.
BY THE COURT: Well, I just can't give them the same thing as I would if they pled guilty because if I did, I'd have to try every one of them.
BY MR. TUCKER: Okay, And... .
BY THE COURT: (Interposing) And we'd, uh, this thing would get so out of hand we never would get caught up.
In the case sub judice, while there were some intemperate comments by the trial judge indicating displeasure with Gillum's exercise of his right to trial by jury, it is apparent from a review of the record that the basis of the 7-year sentence was the sentencing report submitted by the state which detailed three or four unindicted offenses of breaking and entering committed by Gillum, which were not revealed to the trial court prior to sentencing. See Williamson v. State, supra. We reiterate our holding in Fermo and progeny that it is absolutely impermissible for a trial judge to impose a heavier sentence based in whole or in part upon a defendant's exercise of his constitutionally protected right to trial by jury. However, where, as here, the record reveals without a doubt that the sentence imposed was based solely upon a defendant's prior convictions, or, as here, the presentencing report, we will not disturb the trial court's discretion in sentencing.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.