584 So.2d 393 (1991)
Luther HEIDELBERG, Jr.
v.
STATE of Mississippi.
No. 90-KA-1003.
Supreme Court of Mississippi.
July 17, 1991.
Rehearing Denied September 11, 1991.
James G. Tucker, III, Bay St. Louis, for appellant.
*394 Mike C. Moore, Atty. Gen., Ellen Y. Dale, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and PITTMAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:

I.
Luther Heidelberg, Jr., prosecutes this appeal from his conviction of burglary of a building other than a dwelling house entered on November 21, 1989, in the Circuit Court of Hancock County, Mississippi. Heidelberg was sentenced to serve a term of seven (7) years in the custody of the Mississippi Department of Corrections.
Heidelberg raises two issues on appeal. First, he contends the trial court erred in ruling the State of Mississippi could use his 1979 conviction for grand larceny to impeach his credibility as a witness in his own behalf. Although Heidelberg did not testify, he suggests the court's ruling had a "chilling effect on his right to testify." Second, Heidelberg claims the trial court erred in prohibiting defense counsel from using a chart as a visual aid to demonstrate the burden of proof during closing argument.

II.
On Friday, February 24, 1989, at approximately 11:30 a.m., Leo Moran, a Waveland resident, and a friend were at a house owned by Moran located on Henderson Avenue. Mr. Garcia, Moran's friend, brought to Moran's attention the fact that two black men were leaving the house next door with a large trunk in their hands. The duo placed the trunk inside the trunk of a blue automobile and drove away. Moran, not recognizing the two men and feeling that mischief was in the making, notified the police.
Andrew Mitchell testified he was in the process of remodeling the house, which was unoccupied, and that an old antique trunk bequeathed to him by his grandmother was missing.
Sandra Henley, an investigator for the Waveland Police Department, testified that the following Sunday, Mrs. Hillary, an antique dealer in Bay St Louis, came to the station house and reported that a certain old trunk had been sold to her on Friday, February 24th, by Charles Bruns.
On Monday, February 27th, Bruns told Henley that he and Luther Heidelberg had taken the trunk from the house in Waveland. The antique trunk was subsequently recovered from Mrs. Hillary's shop.
The State's case against Heidelberg consisted largely of the testimony of Charles Bruns, a self-confessed accomplice who had entered a plea of guilty to the same crime. Bruns testified he and Heidelberg removed the trunk from the house on Henderson Street and placed it inside the trunk of a blue automobile owned by Debra Lewis, the defendant's girlfriend with whom he lived. Bruns and Heidelberg then took the trunk to Mrs. Hillary's shop that afternoon where Bruns sold it for approximately $40. The proceeds of the sale were shared equally with Heidelberg who remained inside the car while Bruns negotiated with Mrs. Hillary.
Bruns testified the burglary of the house and theft of the trunk was instigated by Heidelberg who told Bruns he had the owner's permission to enter the house and remove "... [a]ny junk or trash that they didn't want."
Corroboration of Bruns' testimony, while not overwhelming, was at least "whelming." The blue car used in the burglary was owned by Debra Lewis, with whom Heidelberg lived. In addition, Beatrice Bruns, the elderly mother of Charles Bruns, corroborated the testimony of her son that on February 24th, the day of the burglary, Heidelberg came by Bruns' home and told Bruns he "... wanted him to go with him to do a little job."
The defendant did not testify in his own behalf but produced his girlfriend, Debra Lewis, as an alibi witness. Lewis freely acknowledged the automobile used in the burglary belonged to her and that she frequently allowed Heidelberg to use it. According to Lewis, on the day of the burglary *395 in question Heidelberg was sick with a cold. After taking Lewis to her workplace at the Hancock Medical Center, the defendant went home where he allegedly remained during the day.
Heidelberg's first trial, which was conducted on November 14-15, 1989, ended in a mistrial when the jury was unable to unanimously agree.

III.

A. Impeachment by Evidence of Conviction of Crime
Prior to trial on the morning thereof, defense counsel moved in limine "... to instruct the State not to impeach the defendant if he testifies concerning his prior conviction of grand larceny, which occurred in 1979." The trial judge ruled the defendant's prior grand larceny conviction as well as the prior conviction of Charles Bruns, an accomplice testifying as a witness for the prosecution, could be used to impeach their respective testimony. Defense counsel thereafter announced to the Court that in view of the ruling with respect to the admissibility of Heidelberg's 1979 conviction of grand larceny, the defendant would not be taking the witness stand in his own behalf.
Heidelberg, citing Saucier v. State, 562 So.2d 1238, 1245 (Miss. 1990), and Hawkins v. State, 538 So.2d 1204, 1206-07 (Miss. 1989), contends the trial judge's ruling which would have permitted use of Heidelberg's prior conviction as a tool of impeachment was erroneous because "the potential for unfair prejudice exceeded the probative value."
Heidelberg, of course, did not take the witness stand. Consequently, his prior conviction was not used to impeach his credibility. Nevertheless, the defendant suggests the erroneous ruling made by the trial judge had a "chilling effect" on his right to testify. Moreover, Heidelberg contends his failure to testify did not forfeit his right to raise the issue concerning the admissibility of his prior conviction.
In Saucier v. State, supra, this Court opined:
We are aware that such a ruling may have a "chilling effect on his right to testify." Hawkins v. State, 538 So.2d 1204, 1206 (Miss. 1989). We have not yet decided whether we will follow the federal course and hold that, to preserve the issue for appellate review, the defendant must take the witness stand and be subjected to impeachment by the prior conviction. See Luce v. United States, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). At the very least, a defendant wishing to present the point on appeal, absent having taken the witness stand himself, must preserve for the record substantial and detailed evidence of the testimony he would have given so that we may gauge its importance to his defense. For example, we can conceive of the case where a defendant may have a bona fide defense which, as a practical matter, is hardly likely to persuade the jury if the defendant himself does not testify and subject himself to cross-examination by the prosecution. If such a defendant has in his distant past a conviction of a serious felony, as here, he may well be faced with a Hobson's choice in deciding whether to testify. On the other hand, if a defendant in fact has nothing of substance to say in his own defense, we are hardly likely to give the time of day to his suggestion that his right of allocution was chilled by the foreknowledge that the prosecution would present his prior conviction.
Heidelberg has failed to preserve for the record "substantial and detailed evidence of the testimony he would have given." Accordingly, this Court is unable to gauge its importance to his alibi defense. We hold that Heidelberg has not properly preserved this issue for appellate review.

B. Closing Argument: Chart as Visual Aid
Heidelberg contends the trial judge erred when he sustained the State's objection to use during defense counsel's closing argument of a homemade chart. Counsel sought to use the chart as a visual aid to demonstrate to the jury the various standards *396 of proof and belief which fell short of the beyond a reasonable doubt standard.
Appearing at the top of the chart in question are the words, "State's Burden of Proof." Listed immediately below these words, one underneath the other, are the following phrases: "Beyond a Reasonable Doubt," Clear and Convincing," "Preponderance of the Evidence," "Probability," "Possibility," "Maybe," "Could Be," and "Not Probable." To the right of a diagonal line bisecting the rectangular chart are the words, "Not Guilty."
The State objected to defense counsel's request to use the chart on the ground "... it's confusing, misleading, and an attempt to define reasonable doubt." The trial judge thereafter voiced the following ruling:
THE COURT: This came up, of course, at the last trial. The ruling is the same as the last trial. I'm going to sustain the State's objection.
I think a number of things on that diagram are proper subject of closing argument by defense counsel. But there's some things on there, particularly, quote unquote, clear and convincing evidence, probable cause, preponderance of the evidence, things like that on there which just lay before the jury without any further definition and they don't relate to the burden of proof of beyond a reasonable doubt.
I think the diagram in effect does attempt to define the term or terminology of beyond a reasonable doubt as a whole, and therefore, I found it inadmissible.
As I say, though, in so saying that, I'm not prohibiting counsel from a wide ranging closing as far as commenting to the jury over whether or not they have or have not met the burden in this case.

Heidelberg relies upon our holding in Gillum v. State, 468 So.2d 856, 863 (1985), where we said: "The prosecutor in this case did no more than follow the direction of this Court in Thorne [v. State, 348 So.2d 1011, 1013 (Miss. 1977)] by limiting his distinctions between reasonable doubt and all possible doubt or beyond a shadow of a doubt to remarks during voir dire and closing [argument]."
Although "[t]rial judges are vested with much discretion in the conduct of judicial proceedings," [Witherspoon v. State, 441 So.2d 1363, 1364 (Miss. 1983)], we hold the lower court abused its judicial discretion when it sustained the State's objection to use of the chart as a visual aid. Assuming, but not deciding, its use was tantamount to an attempt to define the term "reasonable doubt," we have held in both Thorne and Gillum, supra, that distinctions between reasonable doubt, all possible doubt, beyond a shadow of a doubt, and the like, while, not properly the subject of jury instructions, are permissible during trial counsel's closing argument.
Moreover, we have heretofore approved the use of charts and diagrams, in one form or another, in civil cases during closing. Nehi Bottling Company of Ellisville v. Jefferson, 226 Miss. 586, 84 So.2d 684 (1956); Clisby v. Mobile & Ohio Railroad Company, 78 Miss. 937, 29 So. 913 (1901).
Although the lower court abused its discretion, we do not reverse because the error, on the whole record, was harmless beyond a reasonable doubt. Cf. Lanier v. State, 533 So.2d 473 (Miss. 1988). See also Turner v. State, 573 So.2d 1335, 1340 (Miss. 1990); Pettit v. State, 569 So.2d 678 (Miss. 1990); Fowler v. State, 566 So.2d 1194, 1198 (Miss. 1990); Hoover v. State, 552 So.2d 834, 840 (Miss. 1989); Rule 103(a), Miss.R.Ev. (1986). There was nothing depicted on the chart that could not have been generously explored and explained via the spoken word. The trial judge made it very clear to defense counsel he would not prohibit counsel from a wide range of oratory identifying the prosecution's burden of proof and from arguing whether or not the State had met its burden in this case. We do not have the benefit of counsel's closing argument in the record and cannot, therefore, determine what was argued and what was not. Counsel may well have covered the subject matter from A to Z.
AFFIRMED.
*397 ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.