DIAZ, J.,
for the Court:
¶ 1. The Quitman County Circuit Court convicted Mose Washington of burglary of a dwelling and sentenced him to a term of three years in the custody of the Mississippi Department of Corrections. Washington appeals, contending (1) that the State failed to prove the building he was convicted of burglarizing was a dwelling within the meaning of the burglary statute and (2) that the trial court erred in denying an instruction on the lesser-included offense of trespass. Finding no merit in these contentions, we affirm.
FACTS
¶ 2. Thelma Scott Ingram, a resident of Milwaukee, Wisconsin, owned a home in Lambert, Mississippi. Ms. Ingram used the home when she visited her family in Lambert. She visited approximately five times each year and would usually stay for two to three weeks each time.
¶ 3. One of Ms. Ingram’s daughters, Patricia, lived directly across the street from her mother’s home in Lambert. On June 26, 1998, Patricia saw a man in black pants and a white T-shirt enter her mother’s home. Patricia knew that no one was staying in the house on that day. In an attempt to get the individual to exit the house, she got in her car and blew the horn. The individual did not come out of the house, so Patricia went into an alley behind the house in an attempt to get help. There, she found Tony Benson who went inside to investigate while the police were summoned. Apparently, the intruder was not found inside the home. When the police arrived, Patricia gave a description of the individual to Officer Tommy Doyle. Accompanied by Patricia, Officer Doyle left in search of the individual. Officer Doyle soon discovered an individual matching the description provided by Patricia. She identified him as Mose Washington.
¶ 4. Washington was arrested and charged with burglary of a dwelling. He gave a voluntary statement to police admitting to his actions. Washington admitted that he gained access to the home by removing an air conditioning unit and crawling in through the window. Once inside, he bathed, put on a T-shirt he found inside the home, and laid down on the couch. A short time later, he became hungry and ate a rusty can of fruit cocktail which he found in the kitchen. He then fell asleep on the couch.
¶ 5. When he awoke the next morning, Washington left the house and went to his job in Tutwiler where he assisted in cleaning out a fire-damaged Fred’s Dollar Store. That afternoon, Washington returned to the home and bathed. At some *477 point after his bath, he decided to sell the air conditioning unit which he had removed to gain access to the home. He approached an individual and asked if he were interested in buying an air conditioner, leading the individual to believe that he had acquired it through his work at Fred’s Dollar Store. The individual agreed to purchase the air conditioner for twenty dollars. It was when Washington returned to the home after selling the air conditioner that he was spotted by Patricia Ingram.
¶ 6. Washington was indicted for the burglary of an occupied dwelling, in violation of Miss.Code Ann. § 97-17-23 (Supp. 1999). Following a trial held in the Quit-man County Circuit Court, the jury found Washington guilty. He was sentenced to a term of three years in the custody of the Mississippi Department of Corrections and five years of post-release supervision.
DISCUSSION
I. WHETHER THE STATE PROVED THAT THE BUILDING WAS A DWELLING
¶ 7. Washington contends the State failed to prove that the budding he was convicted of burglarizing was in fact a dwelling. He claims that because the building’s owner, Ms. Ingram, only stayed there occasionally during her visits to Mississippi, it is not a dwelling within the meaning of the burglary statute. In support of his claim, Washington points to the fact that the building lacked a working refrigerator and stove.
¶ 8. Miss.Code Ann. § 97-17-23 (Supp. 1999) provides that “[e]very person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another ... and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.” A dwelling house is defined as “[ejvery building joined to, immediately connected with, or being part of the dwelling house.... ” Miss.Code Ann. § 97-17-31 (Rev.1994). Washington argues that the home was too infrequently occupied to qualify as a dwelling in that Ms. Ingram only spent approximately ten to fifteen weeks each year in the home.
¶ 9. The Mississippi Supreme Court has held that “a person may simultaneously have two dwellings subject to burglary and sometimes reside with his family in one and sometimes in the other. The breach of one of them in the absence of his family would still be burglary.” Gillum v. State, 468 So.2d 856, 859 (Miss.1985). The intention of the dweller is the material consideration in determining whether a building may be characterized as a dwelling for purposes of the burglary statute. Id. A temporary absence does not destroy the character of a home as a dwelling if the dweller leaves with the intent to return. Id. at 860.
¶ 10. Washington relies upon Scott v. State, a case in which the owner of a building visited once or twice a year, usually staying a week or less. Scott v. State, 62 Miss. 781 (1885). The building contained nothing but some bedding and old clothes. Although the owner ate and slept at the house, his meals were prepared elsewhere. Id. The Mississippi Supreme Court found that “[t]he building as described by the testimony was not a dwelling house in legal contemplation. To render a building a dwelling house, it must be a habitation for man, and usually occupied by some person lodging in it at night.” Id. at 782.
¶ 11. The present case is factually distinguishable from Scott. Ms. Ingram used her Lambert home on a regular basis for a period of eight or nine years. In fact, she had visited her home several weeks before the burglary. Moreover, Ms. Ingram’s daughter lived in the home on a permanent basis while attending high school in Lambert and had only left the house a few *478 months prior to the burglary. Testimony reveals that at the very least, the home contained clothing, a bed, a sofa, a microwave oven and other necessities. Washington’s own testimony establishes that there was running water and electricity, as he stated that he bathed and turned on a light inside the home. Finally, contrary to Washington’s assertions, the fact that the refrigerator was unplugged and the stove non-functional does not prevent the building from being classified as a dwelling.
¶ 12. A doubt as to one’s intention to return coupled with long-continued absence may be sufficient to destroy the character of a house as a dwelling. Gillum, 468 So.2d at 859. As we stated above, Ms. Ingram visited the home on a regular basis and there is no evidence that she did not intend to continue to do so. Her home is a dwelling as contemplated by the burglary statute.
II. WHETHER THE TRIAL COURT ERRED IN DENYING AN INSTRUCTION ON THE LESSER-INCLUDED OFFENSE OF TRESPASS
¶ 13. Washington claims that when he broke into the dwelling, he did not have the intent to commit a crime therein. Instead, he merely intended to bathe and sleep. He claims that only after he entered the dwelling did he decide to eat the fruit cocktail, take the shirt, and sell the air conditioner. Therefore, he asserts that the trial court erred in denying his requested instruction on the lesser-included offense of trespass. We disagree.
¶ 14. “There are two elements that must be proven in order to convict a person for the crime of burglary. These are (1) an unlawful breaking and entering, and (2) the intent to commit some crime once entry has been gained.” Harrison v. State, 722 So.2d 681 (¶ 11) (Miss.1998). The existence of the intent to steal may be presumed from proof of breaking and entering. Gillum, 468 So.2d at 860. Otherwise, those individuals apprehended before they actually commit a crime inside the dwelling would escape punishment for the crime of burglary notwithstanding them intent. As the supreme court has noted:
Some presumptions are to be indulged in against one who enters a building unbidden at a late hour of night, else the burglar caught without booty might escape the penalties of the law. People are not accustomed in the nighttime to enter homes of others, when asleep, with innocent purposes. The usual object is theft; and this is the inference ordinarily to be drawn, in the absence of explanation from breaking and entering at night, accompanied by flight when discovered, even though nothing has been taken.
Dixon v. State, 240 So.2d 289, 290 (Miss.1970).
¶ 15. The presumption is unnecessary in the present case, as Washington’s intent was proven by his actions. “Intent is an emotional operation of the mind, and it is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time. Defendant’s intention is manifested largely by the things he does.” Newburn v. State, 205 So.2d 260, 265 (Miss.1967) (emphasis added). Stated differently, “[ujnless one expresses his intent, the only method by which intent may be proven is by showing the acts of the person involved at the time in question, and by showing the circumstances surrounding the incident.” Voyles v. State, 362 So.2d 1236, 1242 (Miss.1978).Washington admits to breaking into the home but denies that his intention was to commit a larceny. Once inside the home, he took food, clothing, and an air conditioner which he later sold for twenty dollars. His actions negate his claim that he only sought sleep and shelter inside the home. Had he been caught merely sleeping, as he contends was his original intent, his argument would be more persuasive.
¶ 16. “[A] lesser included offense instruction should be granted unless the *479 trial judge — and ultimately this Court— can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense.” Rowland v. State, 531 So.2d 627, 631 (Miss.1988). The evidence of Washington’s guilt is overwhelming. No rational jury could have returned a verdict other than guilty as charged.
¶ 17. THE JUDGMENT OF THE QUITMAN COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO QUIT-MAN COUNTY.
BRIDGES, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., KING, P.J., AND IRVING, J.