ROBERTS, J.,
Specially Concurring.
¶ 28. I agree with the majority’s well-reasoned opinion. I do not write separately because I find the majority’s opinion inadequate in any way. Instead, I write separately to discuss my concern with the constitutional validity of Christopher Wade Elliott’s plea under Alford. Having closely examined Elliott’s pro se motion for post-conviction relief and construed it lib *710 erally, I conclude this issue was neither presented to the trial court nor preserved for appeal. I write separately in the hope that what I say may, in some small way, assist the bench and the bar when analyzing the constitutional issues present when an accused indicates a desire to plead guilty while simultaneously protesting his or her innocence.
¶ 29. The overwhelming majority of incarcerated offenders lose their liberty either as a direct consequence of pleading guilty and factually admitting the commission of the charged offense or by a jury’s verdict concluding that the prosecution proved the charge beyond a reasonable doubt. Today’s case is one of those rare occasions when an accused indicates his desire to plead guilty and expose himself to incarceration, yet he simultaneously protests that he is factually innocent of the crime. Such a conundrum creates a constitutional dilemma for the trial judge and mandates, I suggest, a full inquiry by the trial court concerning the reason for such a plea as well as a determination that pleading guilty is a rational choice by the accused and is, in fact, in the accused’s “best interest.”
¶ 30. A “best-interest” guilty plea is often simultaneously referred to as an “Alford plea” in recognition of the United States Supreme Court’s decision in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Henry C. Alford pled guilty to second-degree murder in a North Carolina state court proceeding. After exhausting the state post-conviction review, Alford filed for habeas corpus relief in federal court. The district court denied relief, but on review, the Fourth Circuit Court of Appeals, in a divided vote, granted relief. The United States Supreme Court analyzed Alford’s guilty plea within the parameters of the Fifth and Fourteenth Amendments’ prohibitions against a deprivation of liberty without due process of law. Ultimately, the United States Supreme Court found that Alford was not entitled to relief.
¶ 31. A short discussion of the facts in Alford is appropriate. Charged with first-degree murder, Alford realized that, if convicted, he risked being sentenced to death or, under the most lenient possible outcome, life imprisonment. Id. at 26-27, 91 S.Ct. 160. However, the prosecution offered Alford the opportunity to plea guilty to a reduced charge of second-degree murder in lieu of pursuing a conviction for first-degree murder. Id. at 27, 91 S.Ct. 160. Alford agreed to plead guilty to second-degree murder. Id.
¶ 32. During the guilty plea hearing, a police officer testified and summarized the prosecution’s case against Alford. Id. at 28, 91 S.Ct. 160. There were no eyewitnesses to the victim’s murder, but two witnesses presented testimony that “shortly before the killing[,] Alford took his gun from his house, stated his intention to kill the victim, and returned home with the declaration that he had carried out the killing.” Id. Defense counsel had interviewed various witnesses that Alford intended to call at trial to establish his innocence, but none of those witnesses supported Alford’s defense. To the contrary, statements from those witnesses strongly indicated that Alford was guilty. The United States Supreme Court characterized the evidence against Alford as “strong evidence of actual guilt.” Id at 37, 91 S.Ct. 160.
¶ 33. Next, Alford “took the stand and testified that he had not committed the murder but that he was pleading guilty [to second-degree murder] because he faced the threat of the death penalty if he did not do so.” Id. at 28, 91 S.Ct. 160. Based on Alford’s steadfast denial that he murdered the victim, the trial court judge *711 asked Alford whether he was certain he wanted to plead guilty to second-degree murder. Id. at 29, 91 S.Ct. 160. Alford responded affirmatively. Id. Alford’s history included a prior conviction for murder, nine armed robbery convictions, and three other assorted felony convictions. The trial court judge took Alford’s substantial criminal history into consideration and subsequently sentenced Alford to thirty years’ imprisonment-the maximum possible penalty for second-degree murder pursuant to North Carolina state law at that time. Id.
¶ 34. The Supreme Court noted that Alford “intelligently conclude[d] that his interests require[d] entry of a guilty plea” and the record before the trial court judge contained “strong evidence of actual guilt.” Id. at 37, 91 S,Ct. 160. “Whether he realized or disbelieved his guilt, he insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading.” Id. Stated differently) “[cjonfronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, Alford quite reasonably chose the latter and thereby limited the maximum penalty to a 30-year term.” Id. The United States Supreme Court held that the trial court judge did not “commit constitutional error in accepting” Alford’s guilty plea to second-degree murder. Id. at 38, 91 S.Ct. 160.
¶ 35. Although there are numerous Mississippi decisions involving Alford pleas, such pleas are relatively rare. It is essential to be certain that these rare pleas are permissible based on the standards involved. As previously mentioned, the circumstances of the guilty plea in Alford involved an accused’s protestation of innocence in the face of “strong” evidence of guilt. While there was some evidence of Elliott’s guilt, based on the scant record before us, it is certainly not as strong as the evidence of guilt in Alford. There were only two witnesses to the events that led to the charge that Elliott faced — Elliott and the victim. The record at the plea hearing is simply void of any other incriminating evidence against Elliott.
¶ 36. Elliott did not confess or give any statements that were adverse to his interests. He maintained that the victim voluntarily consented to performing oral sex on him, but later she became jealous and bit him when she realized he was talking to another girlfriend on the phone. I do not mean to imply that I find Elliott more credible than the victim. I only mention these aspects to point out that the evidence against Elliott was a “he said/she said” scenario. The circuit court judge came to the same conclusion. This fact is clear from the circuit court judge’s statement that “this is one of those [cases] where just two people were present and it’s one against the other.” To summarize, while there was evidence that Elliott may have been guilty of sexual battery, that evidence was not necessarily any “stronger” than the evidence that Elliott was not guilty of sexual battery.
¶ 37. Another critical aspect of an Al-fbrd plea is that the accused must “intelligently conclude that his interests require entry of a guilty plea ... because in his view he had absolutely nothing to gain by a trial and much to gain by pleading.” Id. at 37, 91 S.Ct. 160. The Ohio Supreme Court has stated that “[t]he essence of an Alford plea is that a [djefendant’s decision to enter the plea against his protestations of factual innocence is clearly and unequivocally supported by evidence that he exercised that calculus for the purpose of avoiding some more onerous penalty that he risks by, instead, going to trial on the charges against him.” State v. Gossard, *712 2003 WL 21658565 at *3 (Ohio Ct.App.2d 2003). The Ohio Supreme Court has also adopted a test to determine whether a record affirmatively demonstrates that an Alford plea has been voluntarily and intelligently made. State v. Piacella, 27 Ohio St.2d 92, 271 N.E.2d 852, 855 (1971). The fifth factor requires that “the record affirmatively discloses that ... [the defendant] was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both.” Id. I do not suggest that the Mississippi Supreme Court should be persuaded to adopt Ohio’s test. Instead, I borrow this language because it eloquently demonstrates my point. That is, a definitive component of an Alford “best-interest” plea is a reasonably articulable basis that pleading guilty is in the accused’s “best-interest.”
¶ 38. In this case, I can find no such basis. Elliott was indicted for one count of sexual battery. He was thirty-one years old when he pled guilty. Elliott stated that the victim was approximately the same age. Elliott did not plead guilty pursuant to a plea bargain. The circuit court judge told Elliott that, when it came to accepting plea bargains, “[w]e don’t do that in this district.” In other words, Elliott’s plea was an “open” plea in that he had no expectation of the sentence he might receive. This fact is abundantly clear in the record.
¶ 39. The prosecution did not drop any charges against Elliott in exchange for his guilty plea. Additionally, Elliott did not plead guilty to a lesser-included offense. He was indicted for sexual battery, and he pled guilty to sexual battery. If he opted for trial and the jury found him guilty, Elliott faced a sentence of up to thirty years in the custody of the Mississippi Department of Corrections. Moreover, Elliott could have appealed his conviction for review. By pleading guilty, Elliott faced the exact same possible outcome but with no opportunity to appeal. In Alford, the option of pleading guilty to second-degree murder and receiving a maximum sentence of thirty years is obviously in one’s best interest when compared to going to trial and receiving, at worst, the death penalty or, at best, life in prison. Here, the possible sentence after a trial on sexual battery was no different than the possible sentence after pleading guilty to sexual battery. I submit that neither Elliott nor any reasonable person could conclude that his guilty plea was in his best interest.[5]
¶ 40. One could argue that by pleading guilty and avoiding the time and expense of a trial, the sentencing judge might be *713 persuaded to be lenient when sentencing a defendant. However, it is impermissible for a sentencing judge to punish a defendant more harshly for the sole reason that the defendant exercised his or her constitutional right to a trial by jury. “[I]t is absolutely impermissible for a trial judge to impose a heavier sentence based in whole or in part upon a defendant’s exercise of his constitutionally protected right to trial by jury.” Gillum, v. State, 468 So.2d 856, 864 (Miss.1985). The possible expectation of leniency at sentencing for pleading guilty is logically connected to the concept that, having confessed guilt, the defendant is expressing a willingness to accept responsibility for his or her actions and is already on the path toward rehabilitation. Such a concept is inapplicable to Elliott, because Elliott claimed actual innocence.
¶ 41. To summarize, based upon the record before us, there is neither “strong” evidence of Elliott’s guilt, nor any basis to conclude that Elliott’s decision to plead guilty was somehow in his best interest. When an accused seeks to plead guilty but maintains he is factually innocent, the trial judge must be on high alert. Prior to acceptance of such a guilty plea, the record must be populated with evidence indicating both strong proof of actual guilt and a rational basis for the conclusion that acceptance of such a plea is truly in the accused’s “best interest.” Only then does the guilty plea qualify as voluntary and intelligent, thereby meeting the constitutional standards expressed in Alford.
LEE, P.J., AND GRIFFIS, J„ JOIN THIS OPINION.

. Elliott claims his attorney assured him that he would be placed on probation if he pled guilty. I agree that Elliott's assertion is belied by the record and Elliott's sworn testimony during the plea hearing. However, there is some logical support for Elliott's belief. Elliott was on bond when he pled guilty. At the end of the plea hearing, the circuit court judge asked whether the prosecution objected to Elliott remaining on bond until the sentencing hearing, which was scheduled for ' three weeks later. The prosecution did not object to Elliott remaining on bond. Assuming that there was an "unspoken” understanding that he would be placed on probation, being allowed to remain on bond and walk out of the courtroom after the plea, could have contributed to that belief. An expectation of harsh sentencing naturally accompanies a greater risk of flight. Accordingly, it seems somewhat inconsistent to allow someone out on bond after a guilty plea if there is an expectation of harsh sentencing in the future. Furthermore, these circumstances are somewhat indicative of the prospect that defendants are aware that unless they confirm that no one has promised them anything in exchange for their guilty plea, the circuit court will not accept their plea. The resulting incentive is for a defendant to lie under oath when that defendant has an expectation of the outcome based on an “unspoken” understanding of what his or her sentence will most likely be.