CRAFT *v.* STATE

No. 39911          January 16, 1956          84 So. 2d 531

*Carl E. Berry, Jr., Joseph H. Stevens,* Hattiesburg, for appellant.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

KYLE, J.

The appellant, Julius Craft, alias Julius Croft, was indicted at the November 1954 Term of the Circuit Court of Forrest County on a charge of grand larceny in the taking, stealing, and carrying away of one yellow gold lady's engagement ring of the value of $5 or more, and one yellow gold lady's engagement diamond ring of the value of $25 or more, the personal property of Harold Parris doing business as Parris Jewelers. He was later tried and convicted and sentenced to serve a term of four years in the state penitentiary. From that judgment he prosecutes this appeal.

Three witnesses testified for the State.

Mrs. Harold Parris testified that her husband owned the jewelry store in the City of Hattiesburg which was operated under the name of "Parris Jewelers", and that she assisted her husband in the operation of the business. She was in the store on September 7, 1954, when the appellant entered the store for the ostensible purpose of purchasing an engagement ring and a wedding ring. Her husband had opened the store that morning, but had gone to the bank about 9:00 o'clock to attend to some business at the bank, and it was during his absence that the appellant entered the store to purchase the rings. The appellant stated to her that he

wished to purchase some rings in a price range of $115 to $150. Mrs. Parris testified that she took several sets of rings from a glass enclosed counter near the front of the store and showed them to the appellant, and while she had these sets of rings on top of the counter the appellant said to her, "Let me hold this set of rings, I like it." The appellant picked up the set of rings and held it in his hand. Mrs. Parris then went to the safe to get other sets of rings within the same price range; but before leaving the ring counter she placed the sets of rings which she had shown the appellant, other than the set which he held in his hand, back in the ring counter. When she returned from the safe to the front end of the store she set the tray of rings that she had taken from the safe on a waste basket behind the ring counter. She picked up a set of the rings to show to the appellant, and about that time her husband entered the store and took over the sale. Mrs. Parris then walked back toward the rear end of the store to wait on the two other customers who were waiting to be served.

Mrs. Parris stated that the only persons in the store at the time she was showing the rings to the appellant were the two customers who were waiting near the back end of the store to see about some watch repairs and her own 5-year old daughter, who was standing behind the ring counter with her.

Harold Parris testified that he returned to the store about 10:00 o'clock. When he walked into the store, the appellant was standing at the front counter, and his wife was waiting on him. Parris told his wife that he would take over the sale, and suggested to her that she go to the rear end of the store and talk to the two men who were waiting there. Parris stated that he noticed that there were several sets of rings setting on top of the ring counter. They were sets in boxes, two sets to the box, and there were four or five boxes. After looking at the rings the appellant told Parris that he wanted a ring

that would cost about $100 and somewhat larger than the rings that had been shown to him; and the appellant asked Parris whether he could get a ring of the grade and size that he wanted. Parris told him that he would try to do so, and Parris suggested that the appellant come back to the store on Saturday. The appellant then left the store without making a purchase. Parris stated that he showed the appellant no rings other than the rings that his wife had taken from the safe.

After the appellant had gone, Parris took the rings off the ring counter and set them inside the counter, and then went back to the rear end of the store to see what the other men wanted. About ten minutes later he returned to the front end of the store to put the rings that had been left in the ring counter in their proper places, and he discovered that a set of rings which had been taken from the ring counter by his wife to show to the appellant was missing. A careful search of the store was made, but the rings could not be found, and the police department was notified. But the rings were never re-covered.

On cross-examination Parris again stated that after the appellant had left the store he placed all the rings that Mrs. Parris had been showing to the appellant in the ring counter, and that he left none of the rings on top of the ring counter. Parris stated that the reason he knew that the set of rings described in the indict-ment was missing was that he had had the rings only a short time. He had received eight new boxes, and had put them on display in the center of the counter, four on each side of the center line. Parris was asked whether he saw the appellant take any rings out of the store, or whether he saw the rings on the appellant. His answer was, "I'm sure he had them, but I can't say that I saw them." He admitted that this was not the first time he had missed rings from the store.

Percy Haynes testified that he entered the store just as the appellant was leaving. There were three or four

people standing in front of the store at that time, and the appellant stopped and talked to them.

The only witness who was called to testify for the appellant was Harold Delk, a member of the police force of the City of Hattiesburg. Delk testified that the police department received a call from the jewelry store about 11:00 o'clock, and was notified that the rings were missing. Delk went to the appellant's home and took the appellant into custody and made a search of the premises, but found no diamond rings on the appellant's person or on the premises.

The first point argued by the appellant's attorneys as ground for reversal on this appeal is that the court erred in allowing the State's witness, Mrs. Harold Parris, to exhibit before the jury and to testify about a jewelry box which she had with her when she testified and which she stated was similar to the small jewelry box in which the rings, which were alleged to have been stolen, were kept while they were on display in the store. But we think there is no merit in this contention.

It is next argued that the court erred in overruling the defendant's motion for a directed verdict at the conclusion of all the evidence on the ground that the State's evidence was insufficient to show that a crime had been committed, or that the appellant had stolen the rings described in the indictment. But we think that the testimony in this case was sufficient to justify the submission of the question of the defendant's guilt or innocence to the jury, and that there was no error in the action of the trial judge in overruling the defendant's motion for a directed verdict at the conclusion of all the evidence.

It is next argued that the court erred in overruling the objection interposed by the defendant's attorney to prejudicial statements made by the district attorney in his argument to the jury, which are set forth

in the special bill of exceptions shown on pages 30 and 31 of the record.

The statements made by the district attorney, as set forth in the bill of exceptions, are as follows:

"Don't you know gentlemen of the jury, that any of these people that is in the business he is in (pointing at the defendant) and does the things that he does, in planning to commit a crime as this, would not go into a place of business and ask for a high price article or set of rings because it would cause suspicion. No, gentlemen, these criminals are too smart for that, they know just how to work things and just as this defendant did they always (ask) for a moderate price item. Gentlemen, don't you know that if a cow theif went to steal a cow he wouldn't go in a big white conspicuous limousine, he would go in an old ragged truck. This defendant knew how these things were done. Why didn't he get an honest job and go to work as other people were."

We think that the court erred in overruling the defendant's objection to the above mentioned remarks made by the prosecuting attorney.

While the prosecuting attorney may characterize accused or his conduct by terms of opprobrium appropriate to the facts in evidence, it is improper for him to indulge in intemperate characterization, personal abuse, or villification of accused, tending solely to arouse or to inflame the passion and prejudice of the jury against him, even where such comments are to some extent supported by the evidence. 23 C.J.S. p. 582, Criminal Law, par. 1106.

Courts generally hold that, "Comments by the prosecuting attorney which refer to, and make unfavorable inferences from, the conduct of accused in the course of the transaction for which he is on trial, or his conduct at any other time or place, or which refer to his character as shown by such conduct, * * * are proper, where

the purported facts referred to by counsel are supported by competent evidence in the case, and where the inferences and deductions sought to be made from such facts are within the bounds of proper argument, but not otherwise.'' 23 C.J.S. p. 573, Criminal Law, par. 1102 a., and cases cited.

The inference which the jury in this case might have been expected to draw from the statements made by the district attorney was that the defendant was an habitual criminal engaged in the business of stealing, and that he knew how to plan and commit such crimes. Yet, there was no proof of such facts in the record. The appellant had not put his character in evidence. He had not testified himself, and it had not been shown that he had ever been convicted of stealing, or that he had committed any other crime, or that he did not work for an honest living. The statements made by the district attorney in his argument were in their nature unsworn statements of facts which were not in evidence and could not have been introduced in evidence if proof of such facts had been offered. Walton v. State, 147 Miss. 17, 112 So. 601, and cases cited.

It is not every argument that is improper in a case of this kind that will cause a reversal of the judgment appealed from, but where the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused and to secure a decision influenced by the prejudice so created, a new trial should be granted. 23 C.J.S. p. 1152, Criminal Law, par. 1442.

We think that the natural and probable effect of the remarks made by the district attorney in this case was to create in the minds of the jurors an unjust prejudice against the accused; and it cannot be said that the evidence in the case was so strong that the remarks complained of could have had no effect upon the verdict rendered.

The judgment of the lower court is therefore reversed and the cause is remanded for a new trial.

Reversed and remanded.

*McGehee,* C.J., and *Hall, Holmes,* and *Gillespie,* JJ., concur.