# IN THE COURT OF APPEALS 12/3/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 93-KA-00946 COA

## CONSOLIDATED WITH

## NO. 93-KA-1020 COA

**DICK PARKER A/K/A WILLIE D. PARKER**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. HENRY L. LACKEY

COURT FROM WHICH APPEALED: CALHOUN COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

OTTIS B. CROCKER, JR.

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: JEFFREY A. KLINGFUSS

DISTRICT ATTORNEY: LAWRENCE L. LITTLE

NATURE OF THE CASE: FELONY--SALE OF A CONTROLLED SUBSTANCE (COCAINE)

TRIAL COURT DISPOSITION: CONVICTED OF SALE OF COCAINE AND SENTENCED AS

A HABITUAL OFFENDER TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF COURT COSTS AND ASSESSMENTS OF $2, 115.00

BEFORE THOMAS, P.J., COLEMAN, AND SOUTHWICK, JJ.

THOMAS, P.J., FOR THE COURT:

SUMMARY

Parker was arrested for the sale of cocaine as a result of an undercover operation in Bruce, Mississippi. Jackie Jones, an agent with the North Mississippi Narcotics Unit, testified that on December 1, 1992, Agent Ronnie Trice, a confidential informant, and he were driving through an area in Bruce known as "the Farm." Jones was wired with a body radio transmitter that was being monitored and recorded by a surveillance team consisting of Narcotics Unit employees Rusty Haynes and Ronnie Thomas.

Jones drove his vehicle to an area where Parker was standing, and Parker approached the three men. Jones testified that Parker approached the vehicle and offered to sell forty dollars of crack cocaine to the men. Jones and the informant got out of the car and walked with Parker to a small shack in front of Parker's Cafe. Jones testified that Parker pulled a cigarette package containing several rocks of crack cocaine from behind a loose board in the shack. Jones paid Parker forty dollars for the cocaine.

The sale was tape recorded, and Jones, Trice, Haynes and Thomas identified the tape, which was admitted into evidence at trial. Parker testified at trial that he did not sell the cocaine to Jones and that he thought that he was at home at the time of the sale. Parker also testified that he had been released from Parchman, where he had been incarcerated for a drug offense, a mere fifteen days prior to the alleged sale.

Parker was convicted for the sale of cocaine within 1,500 feet of a school and sentenced as a habitual offender to thirty years imprisonment. Feeling aggrieved, Parker appeals, assigning four issues as error. Finding all four without merit, we affirm.

I. DID THE TRIAL COURT ERR IN DENYING PARKER'S MOTION

FOR A CONTINUANCE ?

Parker asserts that the trial court erred in denying his motion for continuance which he filed on August 3, 1993, one week before trial was scheduled to commence. In support of this motion, Parker filed an affidavit stating that he was unable to prepare for trial since he was commuting to work every day from Coffeeville, Mississippi to Bruce, Mississippi, and he was caring for his terminally ill sister from November 1992 until her death on July 3, 1993.

The trial court overruled Parker's motion on August 4, 1993. On August 6, 1993, Parker renewed his motion for continuance, and the motion was again denied. Parker also moved ore tenus for a

continuance on the morning of trial, and the trial court denied the motion yet again.

The decision of whether to grant a motion for continuance is left to the sound discretion of the trial court. This Court will reverse such a ruling only upon a showing of an abuse of discretion, the result of which would be manifest injustice to the defendant. *Jackson v. State*, 672 So. 2d 468, 476 (Miss. 1996); *Atterberry v. State*, 667 So. 2d 622, 631 (Miss. 1995); *Johnson v. State*, 631 So. 2d 185, 189 (Miss. 1994). The trial court did not abuse its discretion in denying the motion for continuance. Further, even if a continuance should have been granted, Parker has not shown any prejudice and was not subjected to manifest injustice as a result of this decision. This issue is without merit.

## II. DID THE TRIAL COURT ERR IN EXCUSING A POTENTIAL JUROR ?

Parker complains that the trial court improperly excused a potential juror, Bill Gibson, from the venire over his objection. The trial court excused Gibson since he was a practicing attorney with a number of cases pending before the court. Parker asserts that the trial court exceeded its authority in excusing Gibson without cause.

A trial court may excuse a juror before he is sworn for any reason which the judge deems sufficient. *Walker v. State*, 671 So. 2d 581, 624 (Miss. 1995); *Nixon v. State*, 533 So. 2d 1078, 1085 (Miss. 1987). Further, such an excusal is left to the sound discretion of the trial judge, and we will not reverse such a decision absent a finding of abuse of discretion. *Id; see also Taylor v. State*, 672 So. 2d 1246, 1263 (Miss. 1996) (potential jurors properly excused for reasons such as age, medical condition, financial hardship, and prepaid vacations). The trial court was properly within its broad discretion in excusing Gibson. There is no merit to this issue.

## III. DID THE TRIAL COURT ERR IN DENYING PARKER'S MOTION

## FOR MISTRIAL BASED ON AN ALLEGED IMPROPER CLOSING ARGUMENT

## BY THE PROSECUTION ?

During closing arguments, the attorney for the State remarked, "I respectfully ask each and every one of you to do your duty. . . ." Parker objected, and the court sustained the objection. Parker did not request that the court admonish the jury to disregard the statement. After the jury retired to deliberate, Parker moved for a mistrial. The trial court denied the motion for mistrial, and Parker asserts that this case should now be overturned since the trial court, although it sustained his objection, failed to admonish the jury to disregard the alleged improper statement.

Parties are given wide latitude in closing argument. *Ballenger v. State*, 667 So. 2d 1242, 1270 (Miss. 1995); *Davis v. State*, 660 So. 2d 1228, 1250 (Miss. 1995). *Dunaway v. State*, 551 So. 2d 162, 163 (Miss. 1989); *Monk v. State*, 532 So. 2d 592, 601 (Miss. 1988).The Mississippi Supreme Court has upheld closing arguments that were similar to the language used in the instant case. *See Monk,* 532 So. 2d at 600 (prosecutor's closing argument that "shame on us if we let him get away with it. . . . You can make a difference today by sending out a message that we are not going to sweep this kind of thing under the rug anymore. . . . If by your verdict, one small child is saved, you will have done your job."); *Carleton v. State*, 425 So. 2d 1036, 1039 (Miss. 1983) (prosecutor's closing argument in

a murder trial asking the jury to convict in order to "let people know what the people of Harrison County stand for"); *Wilson v. State*, 344 So. 2d 739, 741 (Miss. 1977) (prosecutor's closing argument that "This is your community. You live in it. You set the standards. And today you can set a standard that you can live by."). There was nothing improper about the State's closing argument.

Nonetheless, the trial court sustained Parker's objection to the statement; however, Parker insists that any possible error was not cured since the judge failed to instruct the jury to disregard the statement. Even if the statement were improper, this issue is still without merit. Parker did not ask the trial court to admonish the jury; the trial court cannot be put in error for doing all that it was asked to do. *Cole v. State*, 525 So. 2d 365, 369 (Miss. 1989).

Additionally, the jury, by its written instructions, was told to disregard all evidence which was excluded from consideration by the court during the course of the trial. Juries are presumed to follow the law and the court's instructions to disregard all sustained objections. *Walker v. State,* 671 So. 2d 581, 618 (Miss. 1996); *Harmon v. State,* 453 So. 2d 710, 712 (Miss. 1984).We are unaware of any case law that mandates a trial court to *sua sponte* admonish a jury to disregard a sustained objection and would not require such action for the simple reason that counsel may not wish for the trial court to admonish the jury and further highlight the objectionable testimony.

Further, even if the trial court should have admonished the jury, there is no merit to this issue. The test for determining whether an improper argument by a prosecutor requires reversal is whether the "natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." *Dunaway*, 551 So. 2d at 163 (quoting *Craft v. State*, 226 Miss. 426, 84 So. 2d 531, 535 (1956)). Although the court did not admonish the jury to disregard the statement, there clearly was no prejudice to Parker as a result of the statement.

A denial of a motion for mistrial is within the sound discretion of the trial court. *Walker,* 671 So. 2d at 622; *Johnson v. State,* 666 So. 2d 784, 794 (Miss. 1995); *Brent v. State*, 632 So. 2d 936, 941 (Miss. 1994). The trial court's refusal to grant a motion for mistrial will not be overturned absent a finding that the trial court abused its discretion. *Johnson,* 666 So. 2d at 794; *Bass v. State*, 597 So. 2d 182, 191 (Miss. 1992). The trial court properly denied Parker's motion for mistrial. This assignment of error is without merit.

IV. DID THE TRIAL COURT ERR IN TAKING JUDICIAL NOTICE OF THE FACT

THAT THE OFFENSE WAS COMMITTED WITHIN 1,500 FEET OF A SCHOOL ?

After the jury retired to deliberate, the trial court heard testimony regarding whether the offense took place within 1,500 feet of a school or public park, a factor which would mandate enhanced punishment for the offense under section 41-29-142 of the Mississippi Code. *See* Miss. Code Ann. § 41-29-142 (1972). Two narcotics officers who participated in the undercover operation testified that the sale took place well within 1,500 feet of Bruce Middle School, and one of the officers further

testified that the sale took place across the street from a playground. After the jury returned the guilty verdict, the trial court ruled that the offense took place within 1,500 feet of Bruce Middle School. The court based his decision on the officers' testimony, and he also "[took] judicial notice of, having knowledge of the location of [the sale] and the Bruce Middle School, that this offense took place within 1,500 feet of a public school. . . ."

Rule 201 provides that, at any time during the proceedings, a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." M.R.E. 201. Further, the comment to Rule 201 specifically allows a court to take judicial notice of the street on which a local department store is located. *Id.* cmt. Certainly, the trial court could also take notice of the location of a public school and a local cafe. Of course, it should be noted that, in the instant case, Parker did not object to the court taking judicial notice nor did he offer any proof to dispute the court's finding either at trial or in his motion for new trial.

We think that the trial court has the power to take judicial notice of such a fact as is at issue in the instant case. However, we would caution trial courts, particularly in criminal cases, to be leery of doing the same.

Alternatively, if we had found that the trial court improperly took judicial notice, the court had before it the testimony of two police officers regarding the location of the sale. Their testimony was scant and weak; however, Parker did not object to their testimony, move to strike the testimony or offer any counter-proof on this issue. This issue, regardless of the actual theory on which Parker is relying, is without merit.

**THE JUDGMENT OF THE CIRCUIT COURT OF CALHOUN COUNTY OF CONVICTION OF SALE OF COCAINE AND ENHANCED SENTENCE AS A HABITUAL OFFENDER TO THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS ARE ASSESSED AGAINST THE APPELLANT.**

**BRIDGES, P.J., BARBER, DIAZ, AND PAYNE,, JJ., CONCUR. KING, J., CONCURS IN RESULT ONLY. SOUTHWICK, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY FRAISER, C.J., COLEMAN AND MCMILLIN, JJ.**

## IN THE COURT OF APPEALS 12/03/96

## OF THE

## STATE OF MISSISSIPPI

### NO. 93-KA-00946 COA

**DICK PARKER A/K/A WILLIE D. PARKER**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

SOUTHWICK, J., CONCURRING:

I agree with the opinion of the Court on Issues I, II and III, I write separately to voice my disagreement with one of the issues discussed in the majority opinion. That issue deals with whether or not the trial court erred in holding that there was sufficient proof that the offense was committed within 1,500 feet of a school.

Proof was offered in two forms. One was through use of a map by a testifying officer. There is some testimony that the map came from the Bruce City Clerk, but whether it was a public record is never stated. Rule 901(7) allows maps to be introduced into evidence as proof of what is on them, if the map is authenticated as a public record. Whether this was a public record or not is academic, since the map was never introduced into evidence and does not appear of record on appeal. Thus the map is not evidence. The opinion of the officer who examined the map is inadmissible, since at best he was giving opinion testimony as a lay witness. Under Rule of Evidence 701, such testimony is admissible only if based on personal observation. The officer made no personal observations, but merely tried his best to decipher a secondary source, the unadmitted map. Neither Rule 901 nor Rule 701 is a basis to allow that testimony. If a map had been properly authenticated and admitted, it would have been credible evidence. The opposing party could then attempt to dispute its interpretation. None of that happened.

What we are left with is the trial judge's taking judicial notice that the offense had, in fact, taken place within 1,500 feet of the school. As the majority discusses, judicial notice may be taken of a fact

that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." M.R.E. 201. The facts should in some fashion be subject to review. The majority analogized this situation to that approved in the comment to Rule 201, namely, that judicial notice could be taken that a local department store was on a particular street. I disagree. The comment example is quintessentially a matter "generally known within the territorial jurisdiction" and "capable of accurate and ready determination."

What has been judicially noticed here is an "eyeball measurement." Perceptions of distance or weight or other measurements are inherently inexact. Lay opinion as to eyeball measurements are at least subject to cross-examination. The perceiver's powers of observation and even memory are immediately called into question, a question that cannot be answered from a cold appellate record. I will take judicial notice that different and equally honest eyewitnesses to a crime may describe a suspect with widely varying estimates of height and weight. Quite confident providers of directions can describe the distance to a desired destination or landmark along the way as being a mile, when in fact it is two, or vice versa.

Although I would always find rough estimates of distance to be inherently unreliable, I will acknowledge that some distances are so obvious as to be subject to judicial notice. That would occur only if there were benchmarks for our review. In other words, Rule 201 permits judicial notice when there is some context for the opinion that permits its accuracy to be determined. For example, were there evidence in the record that the site of the sale and the school were directly across the street from each other, I would accept judicial notice that city streets are considerably less than 1500 feet wide. No such evidence appears here. Instead, all we have is one person's opinion, no different than lay opinion testimony even if by a judge. Under Rule 201 this distance is not a matter that we can hold on this record was either generally known or subject to accurate and ready determination from reliable sources.

Although I am not in agreement with the majority's analysis of judicial notice, the analysis does not affect the sentencing of Parker in this case. Parker was sentenced to thirty years imprisonment. For sale of cocaine, Parker could be sentenced to a maximum of thirty years imprisonment. Miss. Code Ann. § 41-29-139(b)(1) (1972). However, since Parker was a habitual offender, he had to be sentenced to the maximum, and in addition the sentence was to be without probation or parole. *Id.* § 99-19-81. That is exactly the sentence he received. The case does not have to be sent back for resentencing. Consequently, I concur in the result.

**FRAISER, C.J., COLEMAN, AND MCMILLIN, JJ., JOIN THIS SEPARATE OPINION.**