# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-00814-SCT

*SUSAN RUSHING a/k/a SUSAN R. RUSHING*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/17/96 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KIMBERLY DROWN KITCHENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY GORE |
| DISTRICT ATTORNEY: | JOHN R. YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/16/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/7/98 |

**BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Susan Rushing was indicted on a single count of uttering a forged prescription by the grand jury of the Alcorn County Circuit Court on October 13, 1995 and found guilty as charged. On July 17, 1996, the circuit court entered an order sentencing her to five years in the custody of the Mississippi Department of Corrections and fining her $2,500. Her motions for a new trial and for a j.n.o.v. were denied on July 22, 1996. We find no merit to her arguments that the circuit court erred in not allowing the defense to make an opening statement; that the court improperly ruled that certain witness testimony was inadmissable; that the charging affidavit did not conform with the indictment to identify the correct date of the alleged offense; that the State made an improper appeal to the community conscience in closing arguments; that the circuit court erroneously failed to rule on the admissibility of the petitioner's other charges; that the jury verdict was against the overwhelming weight of the evidence; and that she did not receive effective assistance of counsel. Accordingly, we affirm the decision of the court below.

### I.

¶2. On Saturday morning, July 8, 1995, Susan Rushing saw her physician, Dr. Jimmy Meeks, at the

Ripley Medical Clinic. He wrote her a prescription for Voltaren, a non-narcotic anti-inflammatory drug used to treat arthritis and arthritis-type pain. He declined her request to refill a prescription for Lortab, a narcotic analgesic combined with Acetaminophen, testifying that he had prescribed several different medications for her back pain, but refused to give her any more of the drug because he felt that she had been getting too many prescriptions for potentially addicting drugs.

¶3. Later the same day, a woman identifying herself as Dorothy Wilson brought a prescription for Lortab in to be filled at the Wal-Mart Supercenter in Alcorn County. The pharmacist, Barbara Jones, noted that the amount of medication prescribed, number 60, was an usually large quantity and testified that normally a pain medication such as Lortab is prescribed in quantities of 12, 24 or 30. The woman talked to Jones for fifteen or twenty minutes about the obviously painful eye injury/condition from which she suffered and the pharmacist assumed that was why so much medication had been prescribed. She remained suspicious, however, because of the woman's talkativeness, the quantity of medication prescribed (with refill) and the fact that the name of the prescribing physician, J. Meeks, was not on the letterhead of the script form.

¶4. On Monday, Jones called Dr. Meeks to verify the prescription. He was not acquainted with Dorothy Wilson, but when Jones described the woman who had given her the prescription, he immediately identified her as a patient he had just seen, but said that her name wasn't Dorothy Wilson. Looking through his charts, he found that it was Susan Rushing, whom he recalled seeing on Saturday.

¶5. At trial, Dr. Meeks testified that the prescription filled at the Wal-Mart Supercenter on July 8, 1995 was not the same prescription he had written for Rushing earlier that day and that it was not his signature on the prescription. Like the pharmacist, he noted that sixty tablets was an unusually large quantity of Lortab and testified that he normally prescribed only fifteen or twenty tablets. He also indicated that the strength of the tablets was improperly marked on the prescription as 75, rather than 7.5 (Acetaminophen and 7.5 milligrams of Hydrocodone, the narcotic component of Lortab).

II.

¶6. Following the circuit court's introductory comments to the jury, the District Attorney was asked if the State was going to make any opening statements. He declined. The defense was not invited to present an opening argument and Rushing's attorney made no objection. Rushing now asserts that the circuit court erred in not providing her with an opportunity to make an opening statement.

¶7. This assignment of error is procedurally barred by Rushing's failure to make a contemporaneous objection at trial. *Lester v. State,* 692 So. 2d 755, 795 (Miss. 1997). However, because Rushing bases her claim of ineffective assistance of counsel, in part, on her attorney's failure to make an objection or request the opportunity to make an opening statement, we address the issue only to the extent necessary to address that matter.

¶8. As Rushing acknowledges, an opening statement is not mandatory. Miss. Code Ann.§ 11-7-147 (1972) provides as follows:

> Before the introduction of the evidence, the plaintiff may briefly state his case orally to the jury, and the evidence by which he expects to sustain it. Then the defendant may briefly state his

case, and the evidence by which he expects to support it.

Likewise, Rule 10.03 of the Uniform Rules of Circuit and County Court Practice states, in relevant part, that "[t]he defense may make an opening statement to the jury at the conclusion of the state's opening statement or prior to the defendant's case in chief." Rule 10.03 further provides that "[t]he statement shall be confined to a statement of the defense and the facts the defendant expects to prove in support thereof."

¶9. Both parties rely on *Black v. State,* 308 So. 2d 79 (Miss. 1975). In *Black*, after the State indicated that no opening statement would be made, the defense asked to make an opening statement. We found that the circuit court did not abuse its discretion in postponing the defendant's opening statement until the presentation of the evidence for the defense. In so ruling, the Court reiterated the general rules:

> In the absence of statute, accused has no right to make an opening statement at the close of the prosecutor's opening statement, and it is discretionary with the court to allow the opening statement for the defense to be made after the close of the testimony for the prosecution. 23A C.J.S. Criminal Law § 1086 (1961).

> In 93 A.L.R.2d 965 (1964) the rule is stated thus:

> Where there is no statute or rule of court as to the time at which defense counsel in a criminal case may make his opening statement, the courts generally hold that it is a matter within the sound discretion of the trial court, and any exercise of such discretion will not be reversible error unless there is a clear showing of abuse of discretion or the defendant suffers some substantial injury.

*Black,* 308 So. 2d at 80. Based on those authorities, the Court found as follows:

> We are unable to determine from the record in this case that appellant was prejudiced by the court's ruling. This is a matter which must be allowed to rest largely within the discretion of the trial court. In the absence of a showing of manifest abuse of discretion, or that substantial prejudice resulted, the action of a trial judge in such a case must be sustained. Here, appellant was not denied the right to state his defense prior to putting on his evidence. The prosecution having made no statement, the court merely postponed the making of the statement for the defense until the time came for presentation of the evidence for the defense. We cannot say, under these circumstances, that there was an abuse of discretion by the trial court or that any right of appellant was prejudiced thereby.

*Id.* As distinguished from *Black,* Rushing's attorney did not request the opportunity to present an opening argument at any point in the proceedings. After the State finished its case in chief, the defense moved for a directed verdict, asserting that the State had not met its burden. When the Court advised Rushing's attorney that the first witness could be called, he replied, "Your honor, the defense rests." We cannot speculate how the circuit court might have ruled had the defense called some witnesses and requested the opportunity to make an opening statement at that time. However, given that the judge received no request from Rushing's attorney to make an opening statement at any time during the trial, we find no abuse of discretion.

## III.

¶10. Rushing next complains that the circuit court erred in ruling, without "a full blown hearing" that testimony by Officer Jimmy Webb, whom Rushing alleged raped her daughter about six months after her arrest, was irrelevant and inadmissible. She contends that his testimony is evidence of the arresting officer's bias against her. There is no evidence in the record of the alleged rape of Rushing's daughter or of any threats against Rushing or her family by local law enforcement officials. The Appellant's Record Excerpts accompanying this appeal include a newspaper article from the Corinth, Mississippi *Daily Corinthian,* dated October 31, 1995, about the investigation of the alleged rape of an unidentified woman by Officer Jimmy Webb. The article was not part of the record presented to the circuit court nor is there any evidence linking the unidentified woman to Rushing. Furthermore, the alleged incident occurred more than six months after Rushing's arrest.

¶11. "'[T]his Court will not consider matters which do not appear in the record and must confine itself to what actually does appear in the record.'" ***Medina v. State,*** 688 So. 2d 727, 732 (Miss. 1996) (*quoting* ***Robinson v. State,*** 662 So. 2d 1100, 1104 (Miss. 1995)). Further, we "cannot decide an issue based on assertions in the briefs alone; rather, issues must be proven by the record." ***Medina,*** 688 So. 2d at 732. The issue, therefore, is not properly before this Court.

## IV.

¶12. Rushing had the fraudulent prescription filled on July 8, 1995. The grand jury 's indictment charged that Rushing "on the 8th day of July, A.D., 1995, wilfully, unlawfully and feloniously deliver[ed] or transfer[red] a false, fraudulent or forged prescription." The Affidavit for Warrant for Arrest, sworn on July 28, 1995, however, stated that the incident occurred "on or about the 18th day of July 1995." Rushing now contends that she was without notice of the actual date of the offense and alleges that the discrepancy caused her to have to "be prepared to defend herself on two separate occasions."

¶13. In ***Medina,*** *supra,* the appellant charged that her indictment was fatally flawed because she was charged with selling controlled substances "over a period commencing in September 5, 1991 until January 10, 1992" rather than "over a twelve-month consecutive period." ***Medina,*** 688 So. 2d at 730. Rejecting her assertion that the trial court erred in not quashing the indictment, we looked at whether Medina was unable to prepare a defense or otherwise was prejudiced by the discrepancy. ***Id. See also*** ***Shelby v. State,*** 246 So. 2d 543, 545 (Miss. 1971)(no error in amending indictment to show charge on February 27, 1970 instead of February 28, 1970 because change did not materially alter facts so as to prejudice defendant's case). However, in the case *sub judice*, the original grand jury indictment, which is intended to "fully notify the defendant of the nature and cause of the accusation," stated the correct date. U.R.C.C.C. 7.06. Even if the date on the indictment rather than on the charging affidavit had been incorrect, Rule 7.06(5) provides that "[f]ailure to state the correct date shall not render the indictment insufficient." Rushing, therefore, cannot complain that she was prejudiced or unable to determine the date of the charge against her. There is no merit to this assignment of error.

## V.

¶14. Rushing next contends that the State, in its closing argument, unfairly inflamed the jury by

appealing to its community conscience and referring to the importance of removing drugs from the streets. In closing arguments, the Assistant District Attorney stated:

> Now on these prescriptions, this is a serious problem in our community. It's not just people selling drugs out on the street. It's people getting forged prescriptions for either abuse that they have or to get the drugs and sell them to someone else. And this case is a very serious case for the State of Mississippi and law enforcement officers, ladies and gentlemen, in your community.

No objection was made to the comment, so Rushing is barred from raising it on appeal. *Lester v. State,* 692 So. 2d 755, 795 (Miss. 1997).

¶15. In as much as Rushing has raised her attorney's failure to object at trial as a basis for her claim of ineffective assistance of counsel, we note that attorneys are permitted "broad latitude" in presenting their closing arguments. *Lester,* 692 So. 2d at 795; *Berry v. State,* 575 So. 2d 1, 9 (Miss. 1990). In *Taylor v. State,* 672 So. 2d 1246 (Miss. 1996), this Court reiterated:

> As set forth in *Craft v. State*, 226 Miss. 426, 84 So. 2d 531 (1956), the test to determine if an improper argument by a prosecutor requires reversal is whether the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice.

*Id*. at 1270 (*quoting Dunaway v. State*, 551 So. 2d 162, 163 (Miss. 1989)). In *Taylor,* we found that while the prosecution's derogatory comments about Taylor's attorney were "unfortunate," they did not constitute reversible error, distinguishing the case from those where clearly improper arguments were made such as *Bridgeforth v. State*, 498 So. 2d 796 (Miss. 1986), where the defendant was referred to as "scum," and *Ellis v. State*, 254 So. 2d 902 (Miss. 1971), where the prosecution labeled the defendant a "professional criminal." *Taylor,* 672 So. 2d at 1269-70. In *Lester,* likewise, this Court found comments by the prosecution that if the jury believed certain testimony and theories by the defense, "they could write down a verdict of not guilty and she would eat it" to be bordering on the inappropriate; Lester's failure to contemporaneously object, however, procedurally barred further consideration. *Id.* at 795. The prosecution's comments in the case *sub judice* do not approach the level of those which we have found to be unfortunate, inappropriate or clearly improper. Further, in *Carleton v. State,* 425 So. 2d 1036, 1039 (Miss. 1983), we found nothing improper in the prosecution's appeal to the community conscience in its closing comment that, "I think when you go back [in the jury room] . . . you are going to find that this can be nothing but murder. You know, we have got to let people know what the people of Harrison County stand for." *See also United States v. Fields,* 72 F.3d 1200, 1208 (5th Cir. 1996)("appeals to the jury to act as the conscience of the community are permissible, so long as they are not intended to inflame."). Procedural bar notwithstanding, it cannot be said that Rushing was prejudiced by the State's argument or her attorney's failure to object thereto.

## VI.

¶16. Rushing next argues that the circuit court failed to rule on her motion in limine regarding the admissibility of other charges against her, stating that she had been charged with "numerous counts of transferring a forged prescription." She further asserts that she had wanted to testify on her own behalf, "stating her innocence, disclosing her whereabouts on the dates in question, and describing the

situation surrounding her arrest due to the law enforcement agents' bias against her." Rushing now claims that because she did not know how the judge would rule on the motion in limine, she was advised by her attorney that she could not testify. She also charges that she was not questioned as to whether she understood her right to testify and knowingly and voluntarily waived that right.

¶17. Rushing's attorney filed a motion in limine on July 16, 1996, the day before trial, seeking to exclude from evidence any mention of prior bad acts or convictions. There is nothing in the record to indicate whether the motion was ruled on by the court. It is well-established that "[i]t is the responsibility of the movant to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same." **Martin v. State,** 354 So. 2d 1114, 1119 (Miss. 1978)(citing **Grant v. Planters' Bank,** 5 Miss. [4 How.] 326 (1840)). *See also,* **Holly v. State,** 671 So. 2d 32 (1996), *cert. denied,* 116 S.Ct. 2565, *r'hrg denied,* 117 S. Ct. 26 (1996)(claim that trial court erred in admitting evidence procedurally barred where defendant failed to pursue ruling on motion in limine and further, failed to raise contemporaneous objection to admission of evidence at trial). Thus, we do not hold the trial court in error for not ruling on the motion. Moreover, the only evidence in the record that Rushing may have previously attempted to have passed a forged prescription is a July, 1994 doctor's affidavit marked as an exhibit to a separate case. There is no indication that evidence of this or any other allegations against Rushing was made known to the jury. It is not even clear from the record whether she had any prior convictions at the time of her trial.

¶18. There further is nothing in the record to indicate that Rushing sought to testify or that she was denied the opportunity to do so. We "cannot decide an issue based on assertions in the briefs alone; rather, issues must be proven by the record." *Medina,* 688 So. 2d at 732. In **Wilcher v. State,** 697 So. 2d 1087, 1095 (Miss. 1997), where the defendant claimed that he was denied the opportunity to testify because the judge declined to make a blanket ruling on his motion in limine regarding the admissibility of prior bad acts, we further found that the assignment of error was procedurally barred because of Wilcher's failure to make a proffer of the testimony he would have presented. The **Wilcher** Court followed the rationale set out in **Settles v. State,** 584 So. 2d 1260 (Miss. 1991):

> This brings us to a consideration of whether Settles has properly preserved the issue. In **Saucier v. State**, 562 So. 2d 1238, 1245 (Miss. 1990), we held that in order to preserve the issue whether a court erred in ruling on a motion to limit use of prior convictions the least that is required of the criminal defendant is that a proffer be made of the testimony that he would have offered but for the ruling. **Id.** at 1245. While, as we note above, the content of defendant's testimony may be of little assistance to the trial court in making a decision on admissibility, the requirement of a proffer serves two purposes. It provides a modicum of assurance that the requested ruling is not purely advisory and, most importantly, it provides a basis for this court's harmless error analysis.
>
> Of course, if a proffer is required in the face of an erroneous ruling, surely no less is required to preserve the issue where no ruling is made. Settles made no such proffer. Under the circumstances we need not reach the question urged upon us by the state, whether, the failure to actually testify is an absolute bar to the question of the availability of prior conviction evidence. Settles' conviction must be affirmed because he failed preserve the issue in the manner we have prescribed in **Saucier**, 562 So. 2d 1238.

*Wilcher,* 697 So. 2d at 1095 (quoting *Settles*, 584 So. 2d at 1265). As we further stated in *Heidelberg v. State*, 584 So. 2d 393, 395 (Miss. 1991), a defendant must preserve for the record "substantial and detailed evidence" of what he would have testified since . . . "if a defendant in fact has nothing of substance to say in his own defense, we are hardly likely to give the time of day to his suggestion that his right of allocution was chilled by the foreknowledge that the prosecution would present his prior conviction."

¶19. Procedural bar notwithstanding, we cannot hold the circuit court in error for failing to rule on the admissibility of any prior bad acts or previous convictions until the State seeks to introduce such evidence. *Wilcher,* 697 So. 2d at 1095. There is no indication in the record that the State attempted to introduce evidence of Rushing's alleged prior charges of forging prescriptions.

## VII.

¶20. At the close of the State's evidence, Rushing moved for a directed verdict, asserting in part that the State had not met its burden of proof. The motion was overruled by the circuit court, as were Rushing's subsequent motions for a j.n.o.v. or a new trial. She now contends that the jury's verdict was against the weight of the evidence.

¶21. This Court will reverse the jury's findings "'only where the evidence is such that reasonable and fair-minded jurors could only find the defendants not guilty.'" *Jackson v. State*, 689 So. 2d 760, 766 (Miss. 1997)(*quoting* *Heidel v. State*, 587 So. 2d 835, 838 (Miss. 1991)). In determining "whether or not a jury verdict is against the overwhelming weight of the evidence, 'this Court must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new trial.'" *Coleman v. State*, 697 So. 2d 777, 788 (Miss. 1997); *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997); *Jackson*, 689 So.2d at 766. "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *Pleasant v. State,* 701 So. 2d 799, 802 (Miss. 1997); *Herring*, 691 So. 2d at 957; *Benson v. State,* 551 So. 2d 188, 193 (Miss. 1989)(citing *McFee v. State*, 511 So. 2d 130, 133-134 (Miss. 1987)).

¶22. Accepting as true the evidence that supports the jury's verdict, there is no merit to Rushing's assignment of error. Rushing saw her doctor on July 8, 1995, the day the prescription was presented at Wal-Mart. Her physician, Dr. Jimmy Meeks, denied writing Rushing a prescription for Lortab, testifying that he had, in fact, refused her request to write a prescription for the drug. Although the patient's name listed on the prescription was Dorothy Wilson, when the pharmacist, Barbara Jones, called Dr. Meeks because of her suspicions, he identified the woman as Rushing, based on the pharmacist's description of her and the particularly nasty eye condition from which she suffered. Considering the facts in the record, we cannot say that the jury's verdict was against the overwhelming weight of the evidence.

## VIII.

¶23. Rushing finally asserts that her attorney did not provide effective assistance of counsel at trial or in the presentation of her post-trial motions. She presents a laundry list of alleged deficiencies, including counsel's failure to subpoena witnesses on her behalf; to confront the alleged bias of the arresting officers; to have the circuit court rule on her motion in limine; to allow her to testify

because her other charges would be used against her; to actively and reasonably communicate with her prior to trial; to inform her as to which charge she would be defending at trial; to investigate possible witnesses for the trial; to give an opening statement and to object to the circuit court's bypass of an opening argument by the State; and to object to the comments in the State's closing argument about "the community conscience."

¶24. In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive her of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984); *Wilcher v. State*, 479 So. 2d 710, 713 (Miss. 1985); *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984). We look at the totality of circumstances to determine whether counsel's efforts were both deficient and prejudicial. *Carney v. State*, 525 So. 2d 776, 780 (Miss. 1988); *Read v. State*, 430 So. 2d 832, 839 (Miss. 1983). "Judicial scrutiny of counsel's performance [is] highly deferential." *Strickland*, 466 U.S. at 689. There is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Carney*, 525 So. 2d at 780; *Gilliard v. State*, 462 So. 2d 710, 714 (Miss. 1985). Only where it is reasonably probable that but for the attorney's errors, the outcome of the trial would have been different, will we find that counsel's performance was deficient. *Dickey v. State,* 662 So. 2d 1106, 1109 (Miss. 1995); *Reed v. State,* 536 So. 2d 1336, 1339 (Miss. 1988).

¶25. Rushing first contends that her attorney failed to investigate and subpoena witnesses for her trial and thus, did not confront the alleged bias of the arresting officers. As we noted *supra,*there is nothing in the actual record to support Rushing's claim of bias against Officer Jimmy Webb. More to the point, the alleged incident upon which she builds her allegations of bias occurred some six months *after* her arrest. It cannot be said that Rushing's attorney acted outside the realm of reasonable professional assistance in not pursuing the introduction of Webb's testimony or that the outcome of her trial would have been different.

¶26. Counsel's failure to have the circuit court rule on Rushing's motion in limine and his alleged refusal to allow her to testify because her other charges would be used against her was addressed *supra.* Especially considering that there is no evidence in the record to show that Rushing previously had been convicted of passing forged prescriptions and that the State made no effort to introduce any such evidence, her attorney's actions were not unreasonable. Further, there is no showing that she was prejudiced by her failure to take the stand at trial.

¶27. Rushing further complains of her attorney's failure to give an opening statement as well as his failure to object to the circuit court's bypass of an opening argument by the State. Given the extent of the State's evidence against Rushing, her attorney's strategy of attempting to discredit the State's witnesses through extensive cross-examination and then moving for a directed verdict based on the sufficiency of the evidence was probably the best tactic to take. Her case hardly can be said to have been prejudiced by the lack of opening statements nor would it seem that the outcome of the trial would have been different had the facts been presented to the jury one more time.

¶28. Finding as we have that there is no merit to Rushing's argument that the prosecution made inappropriate comments about "the community conscience," we further cannot say that her attorney acted outside the realm of reasonable professional assistance in failing to object to them.

¶29. Rushing has not shown either that her attorney's performance was deficient or that the outcome

of her trial might have been different but for any alleged deficiencies. Accordingly, there is no merit to the assignment of error.

## IX.

¶30. Finding no merit to any of the assignments of error raised by Rushing or to her claims of ineffective assistance of counsel, we affirm the order of the circuit court.

¶31. **CONVICTION OF UTTERING A FORGED PRESCRIPTION AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AND PAYMENT OF A FINE OF $2,500.00 AND OTHER COSTS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**