KING, C.J.,
for the Court.
¶ 1. Darwin Strahan was convicted of capital murder for the kidnapping and murder of Thomas Giles and sentenced to life imprisonment in Yazoo County Circuit Court. On appeal, Strahan raises the following three issues, which are stated verbatim from Strahan’s appellate brief:
I. THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. THE STATE COMMITTED REVERSIBLE ERROR WHICH UNDULY PREJUDICED THE JURORS AGAINST THE APPELLANT.
III. THE CUMULATIVE EFFECT OF THE ABOVE ERRORS DENIED THE APPELLANT A FUNDAMENTALLY FAIR TRIAL.
Finding no error, this Court affirms.
FACTS
¶ 2. On July 1, 2002, Allen Ramsey discovered a body in Yazoo County, Mississippi, near Highway 3. He immediately called the Yazoo City Police Department. The police found the victim, identified as Thomas Giles, face-down and shoeless in a cornfield. An autopsy revealed that Giles had suffered six gunshot wounds to the head as well as blunt-force trauma to his face and head.
¶ 3. In the early morning hours of July 1, 2002, Thomas Giles and a number of other people were gathered at the home of Tommy White in Yazoo City. Tommy *971 White was there with his girlfriend, Latoya Allen, and her twins. Tommy White’s sister, Krystal White, and her friend, Cor-tiss Washington, had driven in from Jackson to spend the night at Tommy White’s home. Krystal’s boyfriend, Micah Ruffin, also was there, as was the defendant, Darwin Strahan. A man named Levi Jefferson also was present.
¶4. The entire party gathered in the kitchen, where the men were playing a dice game. Tommy White had lost several hundred dollars to Giles, who had approximately five hundred dollars in his possession. Krystal White was helping Latoya Allen fix her hair. At some point, Tommy White became upset over losing money to Giles. Krystal White testified that Tommy White and Strahan left the kitchen and went to the back of the house and had a conversation.
¶ 5. After Tommy White and Strahan returned to the kitchen, Strahan and Micah Ruffin stepped outside. Upon re-entering the kitchen, Strahan began beating Giles with a brick. Ruffin joined him, brandishing a gun. Both Krystal White and Washington testified that when Stra-han and Ruffin began their assault on Giles, Strahan ordered everyone else to go to the back of the house. Jefferson, Krystal White, and Washington testified that everyone moved to the back of the house and stayed there for a short period of time “until everything got quiet.”
¶ 6. After things got quiet, Krystal White and Washington got into a car, a Cadillac, with Strahan and Ruffin and left Tommy White’s house. Both women testified that the car had been moved to the backyard, just outside the kitchen door. Once in the car, the women realized that Giles was in the trunk. They testified that Ruffin then drove the car toward the highway, but instead of getting onto the highway, he pulled off into a field. Once in the field, Strahan and Ruffin exited the car, pulled Giles from the trunk, and carried him away from the car. Ruffin then asked the women for the gun, which they refused to give him. Ruffin then grabbed the gun and joined Strahan and Giles in the cornfield.
¶ 7. Krystal White testified that she heard six shots but did not see who pulled the trigger. She testified, however, that Washington watched the shooting. She further testified that when the men returned to the car without Giles, Strahan was carrying the gun. Washington testified that she saw Strahan pull the trigger. After Ruffin and Strahan returned to the car, Ruffin drove the four of them to Jackson, where they spent two days in a hotel along the 1-55 corridor in Jackson. Washington testified that Ruffin paid for the room.
¶ 8. Meanwhile, Tommy White called the Yazoo City Police Department and reported a burglary at his home; however, he did not make the call to report the crime until more than four hours after the assault and kidnapping of Thomas Giles. When questioned by police about Giles, Tommy White stated that he had not seen Giles and that Giles had not been in his home.
¶ 9. Police brought Krystal White and Washington in for questioning in connection with the crime on July 6, 2002. Both women gave statements to the police and were subsequently charged with capital murder. Police brought Strahan in for questioning on July 8, 2002, following a search of his home, in which they found Strahan hiding in the attic. Strahan gave two statements to police, both of which were admitted as evidence at trial. That day, Tommy White’s mother, who lived in Jackson, turned in a pair of shoes to the local police. Yazoo City police later determined that the shoes belonged to Giles.
*972 ¶ 10. Following the presentation of evidence, the jury found Strahan guilty of capital murder. He was sentenced to life without the possibility of parole.
ANALYSIS
I. THE VERDICT WAS NOT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 11. Following the trial, Stra-han made a timely motion for a new trial and/or a motion for judgment notwithstanding the verdict. The trial court denied the motion. On appeal, Strahan argues that the verdict was against the overwhelming weight of the evidence. Specifically, Strahan contends that the jury’s verdict was based on unreliable eyewitness testimony by witnesses with an incentive to lie and that there was no physical evidence linking Strahan to the kidnapping and murder. In reviewing this point of error, this Court applies the following standard of review: The evidence must show, beyond a reasonable doubt, that the defendant committed the crime with which he was charged. In evaluating that evidence,
“the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt”. Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted). Should the facts and inferences considered in a challenge to the sufficiency of the evidence “point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” the proper remedy is for the appellate court to reverse and render[, i.e. reverse and discharge]. Edwards v. State, 469 So.2d 68, 70 (Miss.1985) [ (citations omitted) ]. However, if a review of the evidence reveals that it is of such quality and weight that, “having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,” the evidence will be deemed to have been sufficient.
Dilworth v. State, 909 So.2d 731, 736(¶ 17) (Miss.2005).
¶ 12. Three witnesses — -Jefferson, Krystal White, and Washington — testified that they witnessed Strahan and Ruffin assault Giles. Krystal White and Washington testified that they were in the car with Strahan and Ruffin when they realized that Giles was in the trunk. Both women testified that they witnessed Stra-han pull Giles from the trunk and take him into a cornfield. Washington testified that she witnessed Strahan shoot Giles. Krystal White testified that Strahan was carrying the gun when he and Ruffin returned to the car without Giles.
¶ 13. Admittedly, both Krystal White and Washington suffered credibility issues. Both women previously had been charged with capital murder and had negotiated pleas in exchange for their testimony against Strahan. Additionally, Krystal White had previously given a statement to police in which she initially denied having seen Giles at her brother’s house that night. In a later statement, she admitted that Giles was, in fact, at her brother’s house but implicated Ruffin in the shooting. She stated that while she did not witness the shooting, when Ruffin returned to the car, he had blood on his shirt. These two statements contradicted her testimony at trial.
*973 ¶ 14. Additionally, the jury heard testimony from Officer Eric Snow of the Yazoo City Police Department that Strahan had given two statements to police. In the first statement, Strahan denied any involvement in the crime at all. In that statement, Strahan told the officer that he and Krystal White were preparing to leave Tommy White’s house when an argument erupted over the dice game. He stated that he left with Ruffin, Krystal White, and Washington and drove directly to Jackson and had no knowledge of any crime. In the second statement, given twenty minutes after the first, Strahan admitted that he and Ruffin assaulted Giles in order to get Tommy White’s money back, but he denied any knowledge of the kidnapping until after he was in the car with Ruffin, Krystal White, and Washington.
¶ 15. Strahan also admitted that he helped Ruffin take Giles out of the trunk of the car but denied any knowledge that Giles had been shot. Strahan stated that he heard the gunshots but that Ruffin told him that he fired the shots to scare Giles into running away. On cross-examination, Strahan’s counsel elicited testimony that Washington initially told police that Ruffin, not Strahan, fired the shots. Those statements were admitted as evidence and were available for the jury’s consideration.
¶ 16. Additionally, counsel for Strahan cross-examined each witness. Counsel raised the question of Tommy White’s involvement, eliciting testimony that White’s mother had possession of Giles’ shoes at her home and putting forth an expert witness who testified that some of the marks on Giles’ body were consistent with Tommy White’s ring. Additionally, counsel for Strahan cross-examined Krystal White and Washington regarding their bias and their motives to protect Tommy White and themselves. Again, these witnesses and their testimony on cross-examination were available for the jury’s consideration.
¶ 17. The responsibility for assessing the credibility of witnesses lies within the province of the jury. See Evans v. State, 725 So.2d 613, 680-81 (11293) (Miss.1997) (citation omitted). In making its decision “the jury may accept the testimony of some witnesses and reject that of others, and may accept in part or reject in part the testimony of any witnesses, or may believe part of the evidence on behalf of the state and part of that for the accused .... ” Evans, 725 So.2d at 680 (¶ 293) (citations omitted).
¶ 18. In this case, the jury’s verdict reflects that the jury accepted the testimony of Krystal White and Washington. Their testimony supported the jury’s verdict that Strahan was involved in the kidnapping of Giles and that Strahan shot and killed Giles. Accordingly, this issue is without merit.
II. THE STATE COMMITTED REVERSIBLE ERROR WHICH UNDULY PREJUDICED THE JURORS AGAINST THE APPELLANT.
¶ 19. Strahan next argues that the prosecutor made inappropriate and inflammatory remarks during his closing argument that rise to the level of reversible error. Specifically, Strahan objects to the following statements made by the prosecutor throughout the course of his closing argument:
“Here he is, has gone to all the trouble of robbing and killing a man and the only thing he got out of it was a pack of cigarettes.”
“But this goes to show how heinous, atrocious, and cruel this situation is. It’s mind-boggling to me that a human being could ever conceive of doing this to somebody but I guess if you get to *974 where you can understand that, then you’re one of them. And I ain’t one of them.”
“It continued until they put the child in the car. I called him a child. That woman’s child over there. He put the child in the car, the trunk, against his will.”
“It bothers me more to kill a mouse than it bothered that man over there to kill a human being.”
Strahan contends that these comments served only to inflame the jury and to vilify Strahan before the jury. A review of the record reveals that defense counsel did not make contemporaneous objections to any of these comments.
¶ 20. Counsel is permitted wide latitude in making closing arguments because
The right of argument contemplates liberal freedom of speech and range of discussion confined only to bounds of logic and reason; and if counsel’s argument is within the limits of proper debate it is immaterial whether it is sound or unsound, or whether he employs wit, invective, and illustration therein. Moreover, figurative speech is legitimate if there is evidence on which it may be founded. Exaggerated statements and hasty observations are often made in the heat of debate, which, although not legitimate, are generally disregarded by the court, because in its opinion they are harmless. There are, however, certain well-established limits beyond which counsel is forbidden to go; he must con-fíne himself to the facts introduced in evidence and to the fair and reasonable deductions and conclusions to be drawn therefrom, and to the application of the law, as given by the court, to the facts.
Clemons v. State, 320 So.2d 368, 371 (Miss.1975). Notwithstanding the broad scope of permissible argument available during closing argument, trial counsel has an obligation, if he believes the prosecutor has violated the wide boundaries afforded counsel during closing argument, “to promptly make objections and insist upon a ruling by the trial court.” Johnson v. State, 477 So.2d 196, 209-10 (Miss.1985). Furthermore, as a procedural matter, “contemporaneous objections ‘must be made to allegedly prejudicial comments during closing argument or the point is waived.’ ” Dunaway v. State, 551 So.2d 162, 164 (Miss.1989) (citations omitted). Accordingly, Strahan is procedurally barred from raising this issue on appeal.
¶ 21. Despite the procedural bar, this Court may address the statements if they were so inflammatory and prejudicial that the trial court should have objected to them sua sponte. Id. (citations omitted). The standard of review for such statements is “whether the natural and probable effect of the improper argument of the prosecuting attorney [created] an unjust prejudice against the accused and [secured] a decision influenced by the prejudice so created” such that a new trial should be granted. Craft v. State, 226 Miss. 426, 435, 84 So.2d 531, 534 (1956). While the prosecutor’s remarks in this case certainly were inappropriate and should have drawn an objection from defense counsel and an admonition from the trial judge, this Court cannot say that the prosecutor’s comments rose to a level that requires this Court to reverse this case and remand it for a new trial, particularly in light of the evidence against Strahan.
III. THE CUMULATIVE EFFECT OF THE ABOVE ERRORS DENIED THE APPELLANT A FUNDAMENTALLY FAIR TRIAL.
*975 ¶ 22. Strahan argues that the combination of the prosecutor’s closing remarks and the unreliability of the witnesses against him requires reversal on the grounds that these errors had the cumulative effect of denying him a fair trial. This Court considers this issue under the following standard of review:
[U]pon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we still have the discretion to determine, on a case by case basis, as to whether such error or errors, although not reversible when standing alone, may when considered cumulatively require reversal because of the resulting cumulative effect.
Byrom v. State, 863 So.2d 836, 847(¶ 13) (Miss.2003). Based on this Court’s analysis of the errors previously raised, the Court finds that this issue is without merit.
¶ 23. THE JUDGMENT OF THE YA-ZOO COUNTY CIRCUIT COURT OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT WITHOUT THE POSSIBILITY OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.